Winslow E. **WINANS** and Eleanor C. Winans, Plaintiffs,

v.

**STATE FARM FIRE & CASUALTY COMPANY, et al., Defendants.**

Civ. No. 88–0889–G(CM).

United States District Court, S.D. California.

June 27, 1990.

Susan E. Basinger, McInnis, Fitzgerald, Rees, Sharkey & McIntyre, San Diego, Cal., for plaintiffs.

Randall M. Nunn, Hughes & Campbell, San Diego, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

GILLIAM, District Judge.

Defendants' motion for summary judgment, or in the alternative, summary adjudication of issues, came on for hearing on April 16, 1990 at 10:30 a.m. in Courtroom 7 before the Honorable Earl B. Gilliam. McGinnis, Fitzgerald, Rees, Sharkey & McIntyre (Susan Basinger and Richard Elliott of counsel) appeared for the plaintiffs. Hughes & Campbell (Randall Nunn of counsel) appeared for defendant. At the conclusion of the hearing, the court ordered supplemental briefing and took the matter under submission. The court hereby issues this memorandum decision denying defendant's motion for summary judgment, or in the alternative, for summary adjudication of issues.

## FACTS

This case arises out of alleged damages to the home of Winslow and Eleanor Winans (plaintiffs). The home was built in 1967 at 6911 Via Valverde, La Jolla, California. Plaintiffs, the present owners, have occupied the home since 1972. On or about December 4, 1975, State Farm Insurance (defendant) issued to plaintiffs a State Farm homeowners insurance policy for the residence. The plaintiffs renewed the policy for several years. During the effective period of the policy, coverage was provided through a variety of policy forms:

| | |
|---|---|
| December '75 to '79: | Form FP–3923 |
| December '79 to '82: | Form FP–7103.1 |
| December '82 to '83: | Form FP–7105.1 |
| December '83 to '84: | Form FP–7175 |
| December '84 to '86: | Form FP–7185 |

On or about January 7, 1985, plaintiffs made a claim under the policy for property damage to the insured premises. Plaintiffs identified their loss as cracks and separation of footings, slabs, walls and ceilings. The loss was alleged to have been caused by "settling."

Pursuant to the claim, defendant conducted an investigation. Defendant retained MV Engineering (MV) to conduct a geotechnical evaluation. MV's March 5, 1985 report indicates that they were first authorized to do only a "preliminary evaluation" which did not include "extensive testing." For this preliminary evaluation, MV reviewed available reports from Guy Winton Company (apparently one of the contractors of the housing subdivision where plaintiffs' home is located). These reports concerned the grading, soil, geology and topography of plaintiffs' lot and other lots in the subdivision. In addition, MV inspected the premises and hand dug two shallow test holes on the lot. Based on the condition of the slab of plaintiffs' home and the test results from the soil surrounding plaintiffs' home, MV made the initial conclusion that plaintiffs' loss was probably attributable to soil settlement. MV's investigation also revealed that several other houses in the same subdivision had cracking problems and that Guy Winton

Company was involved in litigation regarding those houses. MV therefore concluded that "[a]lthough the cracks appear relatively innocuous at this time, the history of cracking of neighboring houses by settlement on this same fill mass would dictate that this be investigated as a cause of cracking to the subject house." To verify this preliminary opinion, MV recommended a subsurface soils investigation.

Defendant thereafter authorized MV to conduct the subsurface investigation. MV's second report dated May 20, 1985 indicates that they took four boring samples of the soils in and around the insured premises. The borings extended to a depth of 37 feet. MV conducted density, expansion and consolidation tests on the soil at various depths in plaintiffs' lot. The preliminary investigation had revealed that plaintiffs' home was built on a "fill lot on the southern flank of a stream ravine." Therefore, the contractor had placed fill soil on the lot ranging from a depth of "3 to 7 feet on the upslope side and 13 to 36 feet on the downslope side." MV's tests of the soil samples revealed, *inter alia,* the existence of "loose alluvial soils" underneath the fill soil. MV concluded that plaintiffs' loss had resulted "from settlement of the loose alluvial soil possibly coupled with heave in the center of the house from expansive soil conditions."

The wording of the different State Farm homeowners policy forms varies, but each contains an exclusion for loss caused by or resulting from earth movement arising out of, among other things, earthquake, volcanic eruption, landslide, mudflow and earth sinking. In addition, each policy form excludes property loss caused by "latent defects." Based on the findings of MV, a subsequent report by Geotechnical Exploration, Inc. and the exclusions in the policies, the defendant determined that plaintiffs' loss resulted from, *inter alia,* latent defect and earth movement. Therefore, by letter dated February 25, 1986, defendant denied coverage under the homeowners policy. This coverage litigation ensued.

## DISCUSSION

 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In cases such as this involving an alleged breach of contract, the appropriateness of summary judgment depends upon the issue presented to the court. If a contractual term is ambiguous, a question regarding intent is raised which requires trial. *See Wards Co., Inc. v. Stamford Ridgeway Associates,* 761 F.2d 117 (2nd Cir.1985). If the contractual terms are unambiguous, contract interpretation is an issue of law and is properly resolved by the court by summary judgment. *Nat. Union Fire Ins. Co., Etc. v. Argonaut Ins. Co.,* 701 F.2d 95, 96–97 (9th Cir.1983). The determination of whether a contractual term is ambiguous is also an issue of law for the court. *United States v. Sacramento Mun. Util. Dist.,* 652 F.2d 1341, 1343–44 (9th Cir.1981).

There are two key issues in this motion. First, was the damage caused to plaintiffs' home caused by third party negligence or by earth movement?[1] Second, even if the court finds that the loss could have been caused by third party negligence, does the "latent defect" exclusion prevent coverage?

 The determination of the first issue—whether the alleged damage was caused by construction negligence or earth movement—is a disputed issue of material fact that is inappropriate for summary judgment. The California Supreme Court, in the recent case of *Garvey v. State Farm Fire & Casualty Co.,* 48 Cal.3d 395, 257

Cal.Rptr. 292, 770 P.2d 704 (1989), has reaffirmed that in most insurance contract cases like this one, the causation issue must be decided by a jury. *Garvey* held that where there are two possible causes for property loss, and the property insurance policy covers one cause but not the other, "[c]overage should be determined by the jury under an efficient proximate cause analysis." *Id.* at 412, 257 Cal.Rptr. 292, 770 P.2d 704 (citing *Sabella v. Wisler,* 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963)). If the jury finds that the earth movement would not have occurred "but for" negligence in construction or design, the negligence is considered the "efficient proximate cause." If third party negligence is not excluded under the homeowners policy, the loss is covered. *Garvey,* 48 Cal.3d 395, 412–13, 257 Cal.Rptr. 292, 770 P.2d 704 (1989); *Mission National Ins. Co. v. Coachella Valley Water Dist.,* 210 Cal.App.3d 484, 493, 258 Cal.Rptr. 639 (1989)[2].

The plaintiffs have submitted enough evidence to raise a genuine issue of material fact regarding causation. Plaintiffs submit that negligent grading when the home was originally built caused the foundation to sink, thereby causing the instant loss. As stated above, the defendant's own investigators from MV concluded in their initial evaluation that plaintiffs' loss was attributable to soil settlement. After further testing, MV concluded that "loose alluvial soil" underneath the foundation was the precise cause of plaintiffs' loss. This evidence alone is enough to raise a triable issue of whether the contractor was negli-

---

1. Plaintiffs argue that the earth movement exclusion in the policy is ambiguous, and therefore trial is required to determine the parties' intent when forming the contract. The court need not resolve that issue at this time, because the discussion below reveals that summary judgment is inappropriate even if the earth movement exclusion is unambiguous.

2. *Sabella* and *Garvey* reconcile the rules of policy construction contained in California Insurance Code sections 530 and 532. Section 530 provides:

 An insurer is liable for a loss of which a peril insured against was the proximate cause, al-

though a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause.

Cal.Ins.Code § 530 (West 1972 & Supp.1990). Section 532 provides:

 If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted.

Cal.Ins.Code § 532 (West 1972 & Supp.1990).

gent in his design or his failure to remove the alluvial soil.

The defendant responds that even if the contractor was negligent, in the end, his negligence caused the earth underneath the house to move, and it is that earth movement which caused the instant loss. Since damage due to earth movement is excluded under the policy, the argument continues, plaintiffs' loss is excluded. This argument must be rejected, for it flies squarely in the face of California law, which requires the jury to determine the precise cause of the loss under the efficient proximate cause analysis. *See supra, Garvey; Sabella.*

The defendant makes another closely-related argument in support of its motion. The defendant asserts that if the negligent activity which caused the loss is the type of activity which is done solely to prevent an excluded peril, the negligence should be excluded along with the peril. The defendant argues that the only reason for removing the alluvial soil underneath plaintiffs' home is to prevent earth movement, an excluded peril under the policy. Therefore, defendant believes that the contractor's negligence should be viewed as one and the same as earth movement for the court's coverage determination. To support its argument, defendant cites dicta from the *Garvey* case:

> A related issue involves whether courts should distinguish between types of negligence when determining whether a loss caused by negligence is covered under a similar policy. For example, if construction is undertaken on the insured premises for the sole purpose of protecting against the operation of a specifically excluded risk under the homeowner's policy, and that improvement subsequently fails to serve its purpose because it was negligently designed or constructed, the damage to the structure should arguably not be covered. On the other hand, ordinary negligence that contributes to property loss, but does not involve acts undertaken to protect against an excluded risk, may give rise to coverage under an all-risk policy. In other words, at some point, courts may want to distinguish between types of negligence when analyzing coverage in a first party property insurance context. The issue, however, was not raised in the present case, and we do not address it here.

*Garvey,* 48 Cal.3d at 408–09 n. 7, 257 Cal. Rptr. 292, 770 P.2d 704.

■ This court declines to adopt defendant's position. In essence, their position creates a new type of faulty workmanship exclusion where none exists in the policy. Such a position strains the contract language and places additional burdens on the insured, who is generally at a disadvantage when negotiating and executing an insurance contract. This court holds that construction negligence which results in earth settling is a separate act which is not excluded under the earth movement exclusions in an all-risk homeowners insurance policy. *See Judah v. State Farm Fire & Casualty Co.,* 217 Cal.App.3d 1181, 1190, 266 Cal.Rptr. 455 (1990), *review granted,* 268 Cal.Rptr. 541, 789 P.2d 341 (1990) (holding that the rationale of footnote 7 of *Garvey* should not exclude ordinary construction negligence which results in damage which is excluded under a homeowners policy, because the normal construction of a house is not undertaken to prevent any sole specific purpose).[3]

---

**3.** The court is unconvinced by defendant's citations to *State Farm Fire & Casualty Co. v. Keenan,* 171 Cal.App.3d 1, 216 Cal.Rptr. 318 (1985) and *Safeco Ins. Co. v. Gilstrap,* 141 Cal.App.3d 524, 190 Cal.Rptr. 425 (1983).

In *Keenan,* the insured, a company that rented and leased airplanes, was sued for negligently entrusting an aircraft to a pilot who was operating a plane when it crashed. The insured's policy did not apply "to the existence, maintenance, operation, use, loading or unloading of aircraft owned by, hired by or for, or loaned to the Insured, or in flight by or for the account of the Insured." The court held that any alleged negligent entrustment of the airplane could only have arisen "in flight by or on the account of the insured" and therefore the claim was not covered. *Keenan,* 171 Cal.App.3d at 22, 216 Cal.Rptr. 318.

In *Gilstrap,* the insureds were homeowners whose son had taken a motorcycle from their garage and allegedly caused an accident. A passenger on the son's motorcycle sued the parents for negligently entrusting the motorcycle to the son. The Gilstraps' homeowners policy excluded coverage for injuries arising out of the

■ The court must now address the second issue presented by this motion. Defendant argues that even if the earth movement was caused by negligence, such third-party negligence was a latent defect which is excluded under the policy. A latent (or inherent) defect is a defect that causes the insured's loss and was not "readily discoverable" at the time the parties entered into the policy. *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1342 (9th Cir. 1989); *see also Essex House v. St. Paul Fire & Marine Insurance Co.*, 404 F.Supp. 978, 992 (S.D.Ohio 1975) (citing *General Motors Corp. v. The Olancho*, 115 F.Supp. 107 (S.D.N.Y.1953), *aff'd*, 220 F.2d 278 (2nd Cir.1955)) (a latent defect is one that "could not have been discovered with proper inspection" or "by any known and customary test"). The insurer's rationale for excluding latent defects is to protect itself from risks of which it could not have been aware when it wrote the policy. If the defects could not have been discovered by a reasonable and proper inspection, then the insurer could not have contemplated their effect on the risk of the potential new policy. Whether a defect could have been "discovered with proper inspection" or was "readily discoverable" seems to be a classic question of fact for the jury.

However, the defendant argues that the instant case is indistinguishable from *Tzung, supra,* where the court granted summary judgment against plaintiffs after finding that any negligence in the construction of a building could not have been readily discoverable. In *Tzung*, the plaintiffs purchased an apartment building in San Diego, and within a year, they began to notice cracks in the drywall, driveway and slab of the building. Eventually, the damage worsened, and the Tzungs filed a claim with State Farm. State Farm denied the claim, citing among other things, the exclusions in the "all risk" policy for faulty workmanship and inherent defects. *Id.* at 1339. At the summary judgment hearing, the Tzungs presented evidence from "two experts who stated that the damage suffered by the Tzungs would not have occurred had the city of San Diego properly tested the soil or had the contractor properly constructed the building to withstand expansion of the soil." *Id.* The district court granted State Farm's summary judgment motion, and the Ninth Circuit affirmed. After holding that the faulty workmanship exclusion allowed State Farm to deny coverage for the alleged third-party negligence, the Ninth Circuit stated that "the exclusion for inherent defects provides an alternative basis for excluding the Tzungs' losses." *Id.* at 1342. The court stated that "defects in construction may constitute inherent or latent defects if the problems thus created are not readily discoverable." *Id.*[4] The Ninth Circuit reasoned that because the Tzungs' two experts reached their conclusions regarding

ownership and use of a motor vehicle. The court held that the lawsuit was not covered because any potential liability "did not exist independently of any use of the motorcycle." *Gilstrap*, 141 Cal.App.3d at 530, 190 Cal.Rptr. 425.

The court declines to extend *Keenan* and *Gilstrap* to the instant case. In those cases, an instrumentality which was explicitly excluded under each policy was used to conduct the negligent activity. In the instant case, the alleged negligence was a separate act which occurred prior to, and allegedly caused, the potentially excluded earth movement. The contractor did not employ any instrumentality excluded under the homeowners policy while it was constructing plaintiffs' home, therefore the *Keenan* and *Gilstrap* cases are inapposite.

4. This statement in *Tzung* seems to conflict with *Kilroy Industries v. United Pacific Ins. Co.*, 608 F.Supp. 847 (C.D.Ca.1985).

*Kilroy* rejected an insurer's argument that the developer's faulty workmanship was the same efficient cause of the insured's loss as the inherent defects in the property. The court ruled that the property would not have contained any inherent defects absent the developer's faulty workmanship. Therefore, the court held that faulty workmanship was a separate efficient cause of the insured's loss and did not "fall within the inherent defect exclusion [of the insurance policy]." *Kilroy*, 608 F.Supp. at 856–57.

The *Tzung* opinion did not refer to *Kilroy, Garvey, Sabella* or any of the other "efficient proximate cause" cases. (It is important to note that *Tzung* based its holding of no coverage on the policy's faulty workmanship exclusion, and the discussion regarding the latent defect exclusion was largely dicta.) Nonetheless, the defendant argues that *Tzung* requires this court to deny coverage to an insured whenever third-party negligence causes a latent defect and the policy contains a latent defect exclusion. The broad reading of *Tzung* that the defendant supports would almost require courts to completely discard the efficient proximate cause analysis in

third-party negligence only after a thorough examination of the apartment building and the soils beneath it, the negligence could not have been "readily discoverable," and therefore summary judgment was appropriate against the Tzungs. *Id.*

This court finds that *Tzung* is distinguishable from the instant case. The *Tzung* court apparently believed the negligence issue appropriate for summary judgment because the plaintiffs' own experts needed a "thorough examination" of the building and the soils before they could reach the conclusion that third-party negligence caused the loss.[5] As stated above, in this case, the defendant's own experts discovered the possibility of negligence by the contractor after only a preliminary investigation. The subdivision's plans easily revealed that plaintiffs' home was built on a sloped lot which required a significant amount of fill soil. In addition, MV immediately discovered that the contractor was involved in litigation regarding homes in the subdivision when they contacted Guy Winton Company and attempted to obtain further information about the grading process used for plaintiffs' home. Even under the interpretation of *Tzung* submitted by defendant, plaintiffs have raised a triable issue of material fact regarding whether any alleged contractor negligence was readily discoverable.

The court therefore denies defendant's motion for summary judgment, or in the alternative, for summary adjudication of issues.

IT IS SO ORDERED.

negligent construction cases, because nearly all homeowners policies contain latent defect exclusions.

This court does not believe that *Tzung* intended to go so far. As stated earlier, California statutory and common law clearly provide that an excluded condition which causes the insured's loss does not prevent coverage if a non-excluded act created the excluded condition. *See* Cal.Ins. Code § 530, *supra; Garvey, supra.* If the defendant wished to exclude faulty workmanship or negligent construction in its homeowners policy, it should have explicitly done so

to inform the insured of the effect of the policy. The defendant also had the option of overriding Insurance Code section 530 by explicitly excluding losses from latent defects "whether other causes acted concurrently or in any sequence with" the latent defects. *See State Farm Fire and Cas. Co. v. Martin,* 872 F.2d 319, 321 (9th Cir.1989).

5. Unfortunately, it is not clear from the opinion how "thorough" the examination by the plaintiffs' experts was.