[No. S019059. Dec. 16, 1991.]

STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff,
Cross-defendant and Appellant, v.
ERIC VON DER LIETH et al., Defendants, Cross-complainants and
Appellants.

## COUNSEL

Knapp, Petersen & Clarke, Ryan C. Knapp, Peter J. Senuty, Horvitz & Levy, Ellis J. Horvitz and Peter Abrahams for Plaintiff, Cross-defendant and Appellant.

Thornton, Taylor, Downs & Becker, Clarke B. Holland, Michael F. Scully, Rogers, Joseph, O'Donnell & Quinn, Susan M. Popik, Robie & Matthai, James R. Robie and Pamela E. Dunn as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Lillick & McHose, Pillsbury, Madison & Sutro, Kenneth R. Chiate, John R. Cadarette, Jr., Berger & Norton, Michael M. Berger, Richard D. Norton and Ann E. Kelly for Defendants, Cross-complainants and Appellants.

## OPINION

**LUCAS, C. J.**—We granted review in this case to resolve a conflict in the Courts of Appeal concerning whether courts should distinguish between types of negligence when analyzing coverage in the first party homeowners property insurance context. (See *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 408-409, fn. 7 [257 Cal.Rptr. 292, 770 P.2d 704] (*Garvey*).) This conflict arises from different interpretations of our observation in *Garvey* suggesting a property insurer may deny coverage when homeowners construct improvements on the insured premises in order to protect the property from the operation of a specifically excluded risk. (*Ibid.*)

As we explain, we conclude the Court of Appeal erred in reversing judgment for the insureds. In our view, the jury correctly determined that third party negligence was the efficient proximate cause of the loss and that State Farm Fire and Casualty Company therefore was liable for damages suffered by the insureds. In addition, we explain that our observation in *Garvey, supra,* 48 Cal.3d at pages 408-409, footnote 7, has no application in cases involving landslide or earth movement precipitated by the negligent acts of third parties. Accordingly, we reverse the judgment of the Court of Appeal and remand the cause for further proceedings consistent with this opinion.

## I. FACTS

The Von Der Lieths (cross-complainants and insureds, hereafter insureds) are homeowners in the Big Rock Mesa area of Malibu, California, an area that has experienced massive landsliding for several years. Insureds purchased their home in 1976. In fall 1983, the County of Los Angeles (hereafter the County) informed them that an incipient landslide might be developing on the mesa. They subsequently noticed cracking in the interior and exterior walls, patio, and front steps of their home.

Since 1976, plaintiff State Farm Fire and Casualty Company (State Farm) provided insureds with an all-risk homeowner's policy. At the time of the loss, the policy provided coverage for "all risks of physical loss to the property . . . except for loss caused by . . . settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings" and for "loss resulting directly or indirectly from: . . . Earth Movement . . . Water Damage, meaning; . . . (c) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk driveway, foundation, swimming pool or other structure." Because the policy did not expressly exclude coverage for losses caused by the negligence of third parties, such negligence was a covered risk. (*Garvey, supra,* 48 Cal.3d at p. 408.)

In April 1984, insureds submitted a claim to State Farm for damage to their house. On December 15, 1985, State Farm paid insureds $14,075.71, to cover physical damage to the dwelling only. State Farm informed insureds that this initial payment did not include payment for "soil work or stabilization of site upon which this structure is situated." Insureds, through their counsel, demanded the policy limits of $231,000 based on their belief that in order to stabilize the ground underneath their home, the entire mesa required stabilization.

Thereafter, State Farm filed a complaint in declaratory relief, asserting that insureds' policy did not cover losses caused by "earth movement or natural groundwater," because those types of risks were specifically excluded under the homeowner's policy. State Farm also asserted its policy did not insure the cost of stabilizing the land under the insured premises. Insureds cross-complained for bad faith, breach of contract, and intentional and negligent infliction of emotional distress, and sought declaratory relief in their favor in the amount of the policy limits. The action was consolidated with three related suits that were settled prior to this appeal.

Insureds contended at trial that third party negligence was the efficient proximate cause of their loss. They assigned negligence to a number of individuals and entities, including the State of California, for removing a portion of the Big Rock Mesa mountain slope to construct the Pacific Coast Highway in the 1930's, and the developer of the property for failing to provide needed protection from landslide activation. Insureds also blamed a local homeowners' organization for its failure to maintain its drain systems and county-required pumping systems (specifically designed to prevent rising groundwater), and other homeowners for their failure to properly maintain their septic tank systems so that the systems did not affect the groundwater level. Finally, insureds claimed the County acted negligently in approving the project originally and in failing to compel dewatering (a

comprehensive system of drains to prevent groundwater from rising) before 1983 contrary to the express recommendation of the county engineer.

Insureds presented expert testimony on the causes of the loss and on the history of earth movement in the area. Their experts testified that the recent earth movement was caused by an increase in the groundwater level due primarily to the use of septic waste disposal systems.

The evidence established that Big Rock Mesa had been the site of six ancient landslides, and minor recorded slides caused by rainfall. The testimony also showed that the mesa had been rendered less stable by the soil removal in 1933 at the base of the ocean cliff.

When the original housing tracts on the mesa were approved by the County in 1962, the County was concerned that the use of septic tank waste disposal systems might elevate the groundwater level and reactivate the prehistoric landslide activity. Nonetheless, relying on a report prepared by the developer's geologist, the County allowed the development to proceed with a septic tank system, on condition that the developer (i) install and maintain four horizontal drains, or hydraugers, in the side of the bluff to drain surface water, and (ii) create an entity responsible for maintaining the hydraugers.

In an attempt to comply with the above conditions, the developer formed the Malibu Mutual Drainage Company (hereafter MMDC), consisting of the original 70 homeowners at the time the first tract was developed. In 1973, a County engineer recommended a dewatering program that was not pursued. The MMDC dissolved in 1975, and various pumping wells on the mesa operated by the homeowners were abandoned. These actions contributed to the rise in groundwater level on the mesa.

In 1983, several homeowners formed the Concerned Citizens for Water Control (CCWC), and insureds contributed $1,100 to the organization. CCWC hired D.A. Evans, Inc., to refurbish the existing dewatering wells on the mesa, install new dewatering wells, and monitor land movement.

In December 1983, the County formed an improvement district and hired D.A. Evans, Inc., to provide landslide mitigation efforts in the area. The district installed additional horizontal drains, reactivated existing hydraugers, and monitored ground movement. At the time of trial, the district was designing a surface drainage system and continuing to pump the dewatering wells and monitor the hydraugers. The district incurred expenses of $2.8 million through the date of trial and estimated spending a total of $4 million to complete the project. The district had authority to spend up to $4.8

million, which would result in an individual assessment to the homeowners of not less than $17,606.

Insureds' home consisted of wood construction on a concrete slab, with a stucco exterior and a dry wall interior. It exhibited cracks in the walls, patio, and front steps, and a tilt of three to four inches from front to rear in the slab. Conflicting opinions were offered regarding whether the damage was the result of landslide movement or settling due to differences in the depth of the landfill under the dwelling. Insureds conceded that they had been compensated by State Farm for the physical damage to their house, not including stabilization costs.

The jury returned a special verdict finding State Farm had breached the terms of the policy by failing to pay insureds the full costs of repair due under the policy and had acted in bad faith in doing so. It awarded insureds $1,100 for reasonable costs incurred to repair their property to protect it from further damage, and compensatory damages of $55,000 for State Farm's breach of contract, breach of the covenant of good faith and fair dealing, and unfair claims practices. The jury also determined that third party negligence was the efficient proximate cause of the damage and that State Farm had not failed to pay for covered physical damage. It further decided that State Farm was not responsible under its policy for the cost of stabilizing the land beneath the dwelling. Both parties filed motions for judgment notwithstanding the verdict, and insureds also filed a motion for new trial. All three motions were denied. State Farm appealed the $55,000 judgment for insureds, and insureds cross-appealed, claiming they were entitled to the policy limits ($231,000), in order to stabilize the ground underlying and supporting their property.

*The Court of Appeal Holding*

The Court of Appeal reversed the judgment and held that the efficient proximate cause of the damage to insureds' home was earth movement, an excluded risk. The court believed the rising groundwater level due to septic systems on the mesa precipitated the earth movement. This rising groundwater, the court reasoned, was also an excluded risk under the policy provision excluding loss caused by "natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure." The Court of Appeal rejected insureds' contention that the elevation of the water level did not involve "natural water" as contemplated by the exclusion, because the groundwater flowed from the septic system, an "artificial" source of water.

Although noting that uncertainties in policy language must be resolved in favor of insured's reasonable expectations, the Court of Appeal concluded this general rule could not assist the coverage claim here. The court held that an ordinary insured could not reasonably believe the exclusion applied to pure, natural groundwater only. Rather, the court concluded, the language of the exclusion was meant to distinguish between groundwater, an excluded risk, and "water emitting from a burst pipe," a covered risk. The court also noted the policy excluded damage caused by "leakage or seepage of water . . . from any . . . plumbing system."

Alternatively, the court reasoned that even if it were to assume the building of the Pacific Coast Highway, the failure to timely dewater the mesa, and poor maintenance of the mesa, amounted to negligent acts under insureds' policy, those acts were excluded from coverage by *Garvey, supra,* 48 Cal.3d at pages 408-409, footnote 7, because they were not "distinct" from other excluded risks.

In so holding, the court observed that in *Garvey, supra,* we left open the question whether courts should distinguish between different types of third party negligence when determining whether such negligence could ever be considered a covered cause under an all-risks homeowner's policy. We stated, "For example, if construction is undertaken on the insured premises for the sole purpose of protecting against the operation of a specifically excluded risk under the homeowner's policy, and that improvement subsequently fails to serve its purpose because it was negligently designed or constructed, the damage to the structure should arguably not be covered. On the other hand, ordinary negligence that contributes to property loss, but does not involve acts undertaken to protect against an excluded risk, may give rise to coverage under an all-risk policy. . . ." (48 Cal.3d at pp. 408-409, fn. 7.)

In addition, the Court of Appeal herein found that the state's conduct in removing the toe of the Big Rock Mesa in order to construct the Pacific Coast Highway in 1933 was "simply too remote to be regarded as an efficient proximate cause of the damage." The court also observed that it failed "to see how the County's failure to prevent the excluded loss could transform it to an included one."

The court determined that the jury erroneously concluded negligence was the efficient proximate cause of the loss because it was improperly instructed under *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 31-32 [27 Cal.Rptr. 689, 377 P.2d 889] (*Sabella*), on the prerequisites for reaching an efficient proximate cause determination. As the Court of Appeal observed, *Sabella, supra,* held that when dependent concurrent causes interact to create property loss, the

loss must be attributed to the "moving" or "triggering cause." Here, the jury was instructed pursuant to *Sabella, supra,* that the "efficient proximate cause of the loss, where there are concurring causes, is the one that sets the others in motion. The efficient proximate cause is the one to which the loss is to be attributed, though other causes may follow it and operate more immediately in producing the loss." (See *ibid.*)

In *Garvey, supra,* we approved *Sabella*'s dependent concurrent causation analysis, but modified its test for determining the efficient proximate cause of a loss by noting that we "use the term 'efficient proximate cause' (meaning predominating cause) when referring to the *Sabella* analysis because we believe the phrase 'moving cause' can be misconstrued to deny coverage erroneously, particularly when it is understood literally to mean the 'triggering' cause. Indeed, we believe misinterpretation of the *Sabella* definition of 'efficient proximate cause' has added to the confusion in the courts . . . ." (*Garvey, supra,* 48 Cal.3d at pp. 403-404.)

As we explain, we conclude the decision of the Court of Appeal should be reversed. The court's determination, that earth movement caused by rising groundwater levels was the efficient proximate cause of the loss, was erroneous under these facts. In addition, the court's conclusion that there was no coverage under the homeowner's policy even if third party negligence was the efficient proximate cause of the loss, because the asserted acts of negligence did not involve risks separate from excluded perils, conflicts not only with policy provisions and principles of coverage as discussed in *Garvey, supra,* 48 Cal.3d 395, but also with the Court of Appeal's decision in *Davis* v. *United Services Auto. Assn.* (1990) 223 Cal.App.3d 1322 [273 Cal.Rptr. 224] (*Davis*), which we approve. (See also *Winans* v. *State Farm Fire & Cas. Co.* (S.D.Cal. 1990) 743 F.Supp. 733, 736 (*Winans*) [construction negligence resulting in earth settlement is separate act not subject to earth movement exclusion in all-risk policy].)

## II. DISCUSSION

### A. *The Efficient Proximate Cause of the Loss*

As we explained in *Garvey, supra,* 48 Cal.3d at pages 406-407, the scope of coverage under an all-risk homeowner's policy includes all risks except those specifically excluded by the policy. When a loss is caused by a combination of a covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss. (*Id.* at p. 402.) As we further explained, the question of what caused the loss is generally a question of fact, and the loss is not covered if the covered risk

was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominate cause. (See *id.* at p. 412.)

Here, there were several causes of the loss: (i) earth movement caused by rising groundwater levels, and (ii) negligence of certain entities and parties in failing to take proper measures to preserve the mesa. ▮▮▮ Insureds first contend the Court of Appeal erroneously concluded that under *Garvey, supra*, 48 Cal.3d at pages 403-404, earth movement, an excluded cause, was the efficient proximate cause of the loss.

In determining that earth movement resulting from the rising groundwater level on the mesa was the efficient proximate cause of the loss, the Court of Appeal relied on our observation in *Garvey, supra*, 48 Cal.3d at page 408, that remote causes of a loss should not amount to covered causes. *Garvey* reasoned that "if the insurer is expected to cover claims that are outside the scope of the first party property loss policy, an 'all risk' policy would become an 'all loss' policy. [Citation]. In most instances, the insured can point to some arguably covered contributing factor. . . ."

The Court of Appeal relied on the above language to conclude that third party negligence was too remote a cause to give rise to coverage under insureds' homeowner's policy. In so doing, however, the court overlooked an important point regarding the scope of an *all-risks* homeowner's policy. ▮▮▮ We emphasized in *Garvey, supra*, 48 Cal.3d at page 408, that if third party negligence is not excluded under such a policy, it is a covered peril. As we stated, third party negligence under a homeowner's policy is a "risk of physical loss" under the policy. (*Ibid.*)

▮▮▮ Moreover, the third party negligence that occurred here could not be considered a remote cause of the loss under either *Garvey, supra*, 48 Cal.3d 395, or *Sabella, supra*, 59 Cal.2d at pages 31-32. The expert testimony overwhelmingly supported the jury's determination that the predominating cause of the loss at Big Rock Mesa was third party negligence. By developing the hillside with septic tanks instead of sewers and failing to properly dewater the hillside, it was inevitable the ancient landslide would be reactivated, causing damage to a substantial number of properties on the mesa.

In addition, the fact that the jury was instructed under *Sabella*'s literal "moving cause" language rather than under *Garvey*'s broader efficient proximate cause language (*Garvey, supra*, 48 Cal.3d at pp. 403-404) is of no consequence. Based on the testimony, it is not reasonably probable a different result would have been reached under *Garvey*'s definition of efficient

proximate cause. (*Ibid.*) Accordingly, the *Sabella, supra,* 59 Cal.2d at page 31, instruction did not prejudice State Farm.

The Court of Appeal and State Farm also rely on *Finn* v. *Continental Ins. Co.* (1990) 218 Cal.App.3d 69, 71 [267 Cal.Rptr. 22], to support the argument that coverage does not exist in this case. The *Finn* court upheld summary judgment for the insurer after determining that property loss attributed to leaking water caused by a broken sewer pipe was an excluded risk under the homeowner's policy provision excluding losses caused by "Continuous or Repeated Seepage or Leakage." (*Ibid.*) The insured's claim, that the break in the pipe (a nonexcluded cause) rather than the leakage from the pipe was the cause of the loss, was rejected by the court on the ground that "Leakage or seepage cannot occur without a rupture or incomplete joining of the pipes." (*Id.* at p. 72.)

Thus, whereas the *Finn* court made a coverage determination based on one cause of a loss, the present case involves several levels of causation—an unstable hillside, third party negligence, earth movement, and a rise in the groundwater level. This is not, as the insurer claims, a case in which the "negligence cannot be separated from the earth movement," thus leaving only one cause of the loss. Although the causes may be distinct in origin, they were dependent causes in the sense that, but for the negligence in building the structures on an ancient landslide site without the proper sewer system or stabilization of the mesa, the landslides might not have occurred or damaged the property to the extent it was damaged. Unlike *Finn, supra,* 218 Cal.App.3d 69, this case presents the classic *Garvey* situation, in which the efficient proximate cause must be determined from a combination of covered and specifically excluded risks. (*Garvey, supra,* 48 Cal.3d at pp. 402-404.)

In addition, the fact that the earth movement may have resulted from rising groundwater levels caused by the development on the mesa does not preclude coverage in this case. As insureds observe, the policy's groundwater exclusion applies to water damage caused by "natural water below the surface of the ground" and not to the artificially high level of groundwater that followed the housing development. Accordingly, we find the natural water exclusion does not preclude coverage here.

We conclude the Court of Appeal erred in determining, as a matter of law, the damage suffered by insureds was not covered by their homeowner's policy. Instead, we hold the jury properly found on these facts that third party negligence was the efficient proximate cause of insureds' property loss, and was covered under their policy with State Farm.

## B. *Third Party Negligence Under an All-risks Homeowner's Insurance Policy*

Although we determined in *Garvey* that third party negligence is a covered risk unless specifically excluded by the standard homeowner's policy, we suggested there might be a narrow category of third party negligence cases in which coverage was not available. As an example, we indicated that if a structure was constructed on an insured's property solely to protect the insured's home against the operation of a specifically excluded risk and because of negligent construction the structure subsequently failed to serve its purpose and the home was damaged by the excluded risk, the damage to the house arguably should not be covered. (*Garvey, supra,* 48 Cal.3d at pp. 408-409, fn. 7.)

State Farm contends the Court of Appeal correctly found that even if the "acts and failings" of the state, County, and developer amounted to negligence, such acts could never be the efficient proximate or predominant cause of the landslide because they did not involve "perils distinct from excluded risks." In other words, State Farm asserts the third party negligence involved here is the type of negligence that *Garvey, supra,* 48 Cal.3d at pages 408-409, footnote 7, meant to exclude. State Farm claims, "Each alleged act of negligence identified by [insureds] . . . , was negligence only because it exposed [insureds'] property to earth movement, an excluded peril. . . . There would have been no negligence absent the risk of earth movement. Therefore, the negligence cannot be separated from the earth movement."

The negligence that occurred in this case was the undertaking of activity that exposed the insured property to greater danger of landslides and earth movement without taking counter measures to eliminate the increased risk of damage. As insureds observe, footnote 7 in *Garvey* does not apply to these facts. The negligent conduct outlined above, causing the landslide and resulting damage to insureds' home, was not designed to and did not fail to prevent the landslide; it was, in fact, the predominating factor precipitating the slide. It is clear that the housing tract at Big Rock Mesa was not created for the purpose of preventing earth movement; it was created as a profit-making development. Likewise, there is no indication the County approved the development in order to prevent earth movement. The septic systems were installed to dispose of household wastewater, not to prevent future landslides. Although the jury reasonably found that these acts amounted to third party negligence, none was completed "for the sole purpose of protecting against the operation of a specifically excluded risk under the homeowner's policy . . . ." (*Garvey, supra,* 48 Cal.3d at p. 408, fn. 7.)

Indeed, State Farm's argument would essentially render third party negligence coverage illusory. Our observation in *Garvey*, *supra*, at pages 408-409, footnote 7, simply indicated that an insured cannot automatically transform an uncovered loss into a covered one by claiming a negligent construction job existed in the chain of causation.

This principle is illustrated in *Davis*, *supra*, 223 Cal.App.3d 1322, 1329-1330, in which the Court of Appeal found that coverage existed under an all-risk homeowner's policy for property loss caused by the excluded risk of settlement that, in turn, was caused by a contractor's failure to properly prepare the soil on which the home was constructed. The contractor also failed adequately to reinforce the dwelling's foundation. The insurer contended the contractor negligence was the type of negligence *Garvey* suggested would not be covered. In rejecting the insurer's argument, the *Davis* court noted, "There are a number of problems with this argument. . . . The improvements here were not merely anti-earth movement devices; they were: (1) grading and (2) a foundation. When seen in this light, it becomes clear neither improvement was the type undertaken solely to prevent earth movement; grading is performed for a variety of reasons including providing an area on which it is cheaper and quicker to build and which may provide a lot more desirable to the final buyer[;] a foundation also provides support for the structure." (*Id.* at p. 1329; see also *Winans*, *supra*, 743 F.Supp. 733, 736.)

As the *Davis* court observed, footnote 7 in *Garvey*, *supra*, was never intended to exclude coverage for negligence when the record establishes the negligently constructed improvements were the type undertaken for reasons other than prevention of an excluded occurrence. (*Davis*, *supra*, 223 Cal.App.3d at p. 1329.) Here, there was ample evidence that the third party negligence leading to the landslide was negligence in planning, approving, and building the Big Rock Mesa subdivision and not negligence in acting to prevent landslides resulting from natural causes. We therefore conclude that our observation regarding types of third party negligence in *Garvey*, *supra*, 48 Cal.3d at pages 408-409, footnote 7, did not preclude liability based on the jury finding that third party negligence was the efficient proximate cause of the insureds' property loss.

## C. *Conclusion*

The decision of the Court of Appeal is reversed. Because it directed judgment for State Farm on the coverage issue, the Court of Appeal declined to address the remaining issues raised by the parties, involving the jury's finding of bad faith, the issue whether State Farm owes a contractual obligation to pay for stabilization of the entire mesa, jury instructions, and

evidentiary rulings. We remand the case, therefore, to the Court of Appeal for a determination of these issues in proceedings consistent with this opinion.[1]

Mosk, J., Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

---

[1]Because we remand the case to the Court of Appeal for consideration of the remaining issues, including whether State Farm is responsible for contributing to the stabilization of the entire mesa, we decline insureds' request to take judicial notice of the Big Rock Mesa Integrated Financing District No. 2 Assessment Role that outlines insureds' assessment costs for stabilization of Big Rock Mesa. (See Evid. Code, §§ 452, 459.)