Seneva BERRY, A sole partnership, d/b/a Sunny Farms, Plaintiff–Appellant,

v.

COMMERCIAL UNION INSURANCE COMPANY, a Corporation, Defendant–Appellee.

No. 95–15380.

United States Court of Appeals, Ninth Circuit.

Submitted June 14, 1996.*

Decided June 27, 1996.

---

* The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed. R.App. P. 34(a) and 9th Cir. R. 34.4.

388

Lanny T. Winberry, Sacramento, California, for plaintiff-appellant.

Gerard A. Lafond, Jr., Los Angeles, California, for defendant-appellee.

Before: REINHARDT and HALL, Circuit Judges, and MERHIGE, District Judge.**

CYNTHIA HOLCOMB HALL, Circuit Judge:

Seneva Berry appeals the district court's summary judgment in favor of Commercial Union Insurance Company, her insurer, after it refused to cover damage to her portable aluminum irrigation pipes which had chemically disintegrated once she flushed copper

** The Honorable Robert H. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. This process is known as "chemigation."

2. The district court's prior order, dated January 19, 1995, had reached the same result as its later

hydroxide based fungicides through them. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

I.

Seneva Berry owns and operates Sunny Farms, a commercial farming operation outside Bakersfield, California. In early 1990, Berry noticed that her crops were suffering from potato and carrot blight. To combat this problem, she decided to flush liquid fungicides through the extensive system of portable aluminum pipes on her farm.[1] From March 28, 1990 through October 3, 1990, and from March 13, 1991 through May 28, 1991, Berry used a copper hydroxide based fungicide called "Champ." From February 26, 1992 through October 5, 1992, she used a different copper hydroxide based fungicide called "Kocide 606."

In October 1992, Berry first discovered that her irrigation pipes were damaged. Further investigation revealed that "the copper in the copper hydroxide based fungicides Champ and Kocide created a cathodic reaction with the aluminum in the irrigation pipe, which damaged that pipe." Neither fungicide's label warned that it would be unsuitable for use in aluminum piping.

Berry filed a claim for the damage with her insurance company, Commercial Union Insurance Company. Commercial Union denied her claim on the ground that her pipes were damaged by "deterioration," a peril specifically excluded by her policy.

Berry then sued Commercial Union in District Court. The parties filed a Stipulation of Facts to Be Deemed Established, and each moved for summary judgment. In its amended February 6, 1995 order, the District Court denied Berry's motion and granted Commercial Union's. *See Berry v. Commercial Union Ins. Cos.*, 876 F.Supp. 1148 (E.D.Cal.1995).[2] Berry's timely appeal followed.

order but differed slightly in its analysis: The original order had concluded that the damage to Berry's pipes had two causes, the fungicide manufacturer's failure to warn and the chemical deterioration of the pipes. The amended order found that these were not two independent causes.

## II.

Berry initially contends that the District Court erred in concluding that "deterioration" was the only cause of damage to her pipes.[3] She claims that the fungicide manufacturers failed to warn her that their products would disintegrate her aluminum pipes and that this failure to warn constituted a second, independent cause without which there would have been no damage. In such cases of multiple causation, Berry notes, a court must examine which cause was the "proximate efficient cause" of the damage and determine whether *that* cause is covered or excluded by the policy. *See Garvey v. State Farm Fire & Cas. Co.,* 48 Cal.3d 395, 257 Cal.Rptr. 292, 296, 770 P.2d 704, 708 (1989); *Sabella v. Wisler,* 59 Cal.2d 21, 27 Cal.Rptr. 689, 695, 377 P.2d 889, 895 (1963). Berry argues that the manufacturer's negligence was the "proximate efficient cause" of the damage to her pipes, and that such negligence is not excluded by Commercial Union's policy.

In response, Commercial Union asserts that the District Court was correct to find that "deterioration" was the only cause of the damage to Berry's pipes. Even if the district court erred on this point, Commercial Union urges us to affirm the lower court on the ground that the "proximate efficient cause" of the damage in this case was the excluded peril of "deterioration." And even if it were not, Commercial Union concludes, manufacturer negligence is an excluded peril under the "defective maintenance" exclusion of the policy.

We review de novo the District Court's grant of summary judgment. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). To do so in this case, we must resolve three issues: (1) whether this is a case of single or multiple causation; (2) if this is a case of multiple causation, whether the "proximate efficient cause" of damage to Berry's pipes was the fungicide manufacturers' negligent failure to warn or the deterioration of the pipes; and (3) if the "proximate efficient cause" was manufacturer negligence, whether that is covered or excluded by Commercial Union's policy. In resolving this issues, we look to California law. *Allstate Ins. Co. v. Smith,* 929 F.2d 447, 449 (9th Cir.1991).

### A.

The California Supreme Court first set down its "proximate efficient cause" analysis in *Sabella v. Wisler:*

> [I]n determining whether a loss is within an exception in a policy, *where there is a concurrence of different causes,* the efficient cause-the one that sets others in motion-is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.

*Sabella,* 27 Cal.Rptr. at 695, 377 P.2d at 895 (emphasis added). Use of this analysis is limited to situations where "there exists a causal or dependent relationship between covered and excluded perils," *Garvey,* 257 Cal.Rptr. at 296, 770 P.2d at 708, such that "two or more distinct actions, events, or forces combined to create the damage," *Chadwick v. Fire Ins. Exchange,* 17 Cal. App.4th 1112, 21 Cal.Rptr.2d 871, 874 (1993) (citations omitted).[4] While these multiple

---

3. We agree with the District Court that the chemical reaction between the copper hydroxide based fungicides and the aluminum irrigation pipes is "deterioration." The California courts have found deterioration to include all "slow-moving disintegration or corrosion of the [insured material] because of external forces." *Brodkin v. State Farm Fire & Cas. Co.,* 217 Cal. App.3d 210, 265 Cal.Rptr. 710, 714 (1989); *Butki v. United Services Auto. Ass'n,* 225 Cal.App.3d 464, 274 Cal.Rptr. 909, 910 (1990) (following *Brodkin*'s definition). In this case, Berry first discovered the damage to her pipes in October 1992, almost two years after she started using the fungicides in March 1990. We find a degra-

dation that takes two years to manifest to be "slow-moving" and therefore to be "deterioration."

4. A few courts have used a slightly different test to determine when a *Sabella* analysis is appropriate: They look to "whether the two perils were conceptually distinct ... [whether the perils] could each, under some circumstances, have occurred independently of the other and caused damage." *Finn v. Continental Ins. Co.,* 218 Cal. App.3d 69, 267 Cal.Rptr. 22, 24 (1990); *see also Employers Cas. Co. v. St. Paul Fire & Marine Ins. Co.,* 44 Cal.App.4th 545, 52 Cal.Rptr.2d 17, 25 (1996) (citing same language).

"actions, events, or forces" are "concurrent" in the sense that they must all occur before there is any damage, use of the *Sabella* analysis is not confined to situations where they occur simultaneously or "concurrently" in time; a *Sabella* analysis is also appropriate where the damage is precipitated by a chain of "actions, events, or forces" occurring in a linear or serial manner over time. *See Sabella*, 27 Cal.Rptr. at 695, 377 P.2d at 895 (applying *Sabella* test where damage to insured's house by mudslide resulted from negligent construction of insured's house and from heavy rains); *Premier Ins. Co. v. Welch*, 140 Cal.App.3d 720, 189 Cal.Rptr. 657, 660 (1983) (applying *Sabella* where damage to insured's house was caused by builder's negligent damaging of underground sewer line and by heavy rains); *Garvey*, 257 Cal. Rptr. at 295, 770 P.2d at 707 (applying *Sabella* where damage to foundation of insured's home was caused by negligent construction of house and by broken sewer line); *Brodkin*, 265 Cal.Rptr. at 713 (finding that cracks in foundation of insured's house resulted from the builder's negligence in failing to remove acidic soil and from the corrosive qualities of the acidic soil itself); *Howell v. State Farm Fire & Cas. Co.*, 218 Cal.App.3d 1446, 267 Cal.Rptr. 708, 714–16 (1990) (remanding for *Sabella* analysis where mudslide damaging insured's home was caused by earlier fire that killed all vegetation on the insured's land and by heavy rains that washed the barren land away); *State Farm v. Von Der Lieth*, 54 Cal.3d 1123, 2 Cal.

Rptr.2d 183, 189–90, 820 P.2d 285, 291–92 (1991) (applying *Sabella* because cracks in foundation of insured's house were caused by the developer's negligence in approving housing project and by a landslide); *Brian Chuchua's Jeep, Inc. v. Farmers Ins. Group*, 10 Cal.App.4th 1579, 13 Cal.Rptr.2d 444, 446 (1992) (applying *Sabella* where pollution damage resulted from a leaking gasoline storage tank and from an earthquake). However, "when ... the evidence shows the loss was in fact occasioned by only a single cause ... the efficient proximate cause analysis has no application." *Chadwick*, 21 Cal. Rptr. 2d at 874 (rejecting *Sabella* analysis where cracks in the walls of insured's house were caused solely by builder negligence); *Finn v. Continental Ins. Co.*, 267 Cal.Rptr. at 24 (rejecting insured's argument that a break in the sewer pipe was a distinct cause of damage from the subsequent seepage of the pipe, and thus finding only one cause of damage); *Employers Cas. Co.*, 52 Cal. Rptr.2d at 25–26 (rejecting *Sabella* analysis where sole cause of pollution damage was negligence).[5]

■ We believe that "two or more distinct actions, events, or forces combined to create" the damage to Berry's irrigation pipes. Had the fungicide manufacturers properly labeled their products,[6] Berry would not have flushed them through the pipes and the pipes would not have been damaged. By the same token, had the fungicides not reacted with

We believe that the two perils involved in this case-negligent failure to warn and deterioration-are conceptually distinct and could cause damage to aluminum pipes independently of one another. It is not impossible to imagine that deterioration from another source might damage Berry's pipes. *See, e.g., Brodkin*, 265 Cal.Rptr. 710, 714 (noting how corrosive soil could deteriorate a foundation); *Butki*, 274 Cal.Rptr. at 910 (same). It is also not impossible to imagine that Berry's use of another negligently designed product might damage the pipes in some way other than by deterioration. For example, Berry might flush a soil additive containing inadequate warnings through the irrigation pipes; this additive could conceivably clog up the pipes so they burst, a form of damage distinct from deterioration.

Because this alternative test does not dispose of this case, we will concentrate on the more widely adopted analysis set forth in the text.

5. We do not find *Murray v. State Farm Fire & Cas. Co.*, 219 Cal.App.3d 58, 268 Cal.Rptr. 33 (1990), cited by both parties and the District Court, particularly helpful. In that case, the Court of Appeals was concerned more about the definition of "deterioration" than whether the damage was attributable to single or multiple causes; indeed, the Court never engaged in a *Sabella* analysis.

6. We observe that the California courts have drawn no distinction between a negligent act and a negligent omission for the purposes of insurance coverage. *See, e.g., Brodkin*, 265 Cal.Rptr. 710 (applying *Sabella* analysis where the home builder was negligent in failing to remove acidic soil).

the pipes in the way that they did, there would have been no damage.[7] It is only the *combination* of these events that damaged Berry's pipes.

Commercial Union responds that the damage to Berry's pipes was caused by deterioration and that any prior reasons for inserting the fungicide into the pipes are too remote and are therefore irrelevant. Commercial Union is effectively asking us to examine only the last event in the chain of causation. This we are not permitted to do. *See, e.g., Howell,* 267 Cal.Rptr. at 716 (finding that previous season's fires were a contributing cause to a mudslide, even though heavy rains were the most immediate cause); *Von Der Lieth,* 54 Cal.3d 1123, 2 Cal.Rptr.2d 183, 820 P.2d 285 (1991) (finding that prior negligence in approving a housing development was a contributing cause to landslide, even though earth movement was the most immediate cause). We therefore conclude that this is a case of multiple causation.

### B.

█ We must now determine whether the deterioration or the fungicide manufacturers' failure to warn is the "proximate efficient cause" of the damage to Berry's irrigation pipes. In *Sabella,* the California Supreme Court defined "proximate efficient cause" both as "the one that sets others in motion" *and* as "the predominating or moving efficient cause." *Sabella,* 27 Cal.Rptr. at 695, 377 P.2d at 895; *see Garvey,* 257 Cal.Rptr. at 296, 770 P.2d at 708 ("*Sabella* defined 'effi-

cient proximate cause' alternatively as the 'one that sets others in motion' and as 'the predominating or moving efficient cause.'") (citations omitted); *Howell,* 267 Cal.Rptr. at 716 (recognizing existence of two tests); *Brian Chuchua's Jeep,* 13 Cal.Rptr.2d at 445 (same). Because the cause which sets the others in motion is not necessarily the predominating cause, California courts have had to decide between the tests. *Compare Employers Cas. Co.,* 52 Cal.Rptr.2d at 25 ("The efficient proximate cause is the cause which sets the other cause in motion.") *and Smith,* 929 F.2d at 451 (same) *with Finn,* 267 Cal. Rptr. at 24 (using predominant cause definition). Despite this split, the courts tend to favor looking to the predominant cause. *See, e.g., Garvey,* 257 Cal.Rptr. at 302 n. 11, 770 P.2d at 714 n. 11 (mentioning only the "predominating cause" definition when discussing what jury must decide); *Finn,* 267 Cal.Rptr. at 24 ("[In *Garvey,* the Supreme Court held] that the 'efficient proximate cause' is the 'predominating cause,' not necessarily the 'triggering' cause.") (citation omitted); *Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.,* 863 F.Supp. 1226, 1230 (D.Nev. 1994) (analogizing to California law and preferring the "predominant cause" test). We will do the same.

We find that the manufacturer's negligence in failing to warn Berry of the adverse effects of the fungicides on aluminum pipes is the "proximate efficient cause" of the damage to Berry's pipes.[8] In *Von Der Lieth,* a Malibu homeowner claimed that the foundation of his house had cracked because Los Angeles County had been negligent in approving the

---

7. Commercial Union argues that Berry is estopped to deny that the cause of the damage to the pipes is deterioration because she stated in paragraph 5 of the Stipulation of Facts to Be Established that "[t]he interaction of the fungicides with the aluminum *caused* small holes to appear and resulted in leaks." We disagree with Commercial Union. To begin with, we doubt that Berry agreed to a *legal* conclusion in a statement of undisputed *facts.* Even if we did find that she intended this result, whether or not the statement in paragraph 5 is true is beside the point: No one argues that deterioration was not *a* cause of the damage-we are asked here to determine whether it is the *only* cause.

8. We are permitted to make this determination as a matter of law. Although the determination of "proximate efficient cause" is normally a question of fact for the jury, *Howell,* 267 Cal. Rptr. at 716, it is a question of law where, as here, the facts are undisputed. *See Mission Nat'l Ins. Co. v. Coachella Valley Water Dist.,* 210 Cal. App.3d 484, 258 Cal.Rptr. 639, 643 (1989); *Premier Ins. Co.,* 189 Cal.Rptr. at 659; *Sabella,* 27 Cal.Rptr. at 695, 377 P.2d 889 ("[W]here the facts on appeal are settled or not in dispute, the determination of proximate cause becomes a question of law.") (citations omitted).

use of underground septic tanks in his housing development and because rising groundwater levels subsequently caused the earth to move. The California Supreme Court determined that, under *Sabella*, the County's negligence was the "efficient proximate cause" of the damage to the foundation. *Von Der Lieth*, 2 Cal.Rptr.2d at 190, 820 P.2d at 292. Similarly, in *Davis v. United Servs. Auto. Ass'n*, 223 Cal.App.3d 1322, 273 Cal.Rptr. 224, 227 (1990), a homeowner claimed that damage to his house was caused by the negligence of the builder in not reinforcing the foundation and by subsequent earth movement; the Court of Appeals upheld the district court's conclusion that the builder's previous negligence was the "efficient proximate cause." *Id.* Because we find the fungicide manufacturers' prior negligence to be indistinguishable from the prior negligence of the County in *Von Der Lieth* and of the builder in *Davis*, we find the "proximate efficient cause" rulings of these cases controlling.[9]

### C.

■ We must next turn to the language of the insurance policy to determine whether the negligence involved in this case is an excluded peril. We review insurance policies de novo, *Smith*, 929 F.2d at 449, and construe any ambiguities in favor of coverage. *Employers Cas. Co.*, 52 Cal.Rptr.2d at 21. We observe that "if third party negligence is not excluded under ... a policy, it is a covered peril," *Von Der Lieth*, 2 Cal.Rptr.2d at 189, 820 P.2d at 292, and that Commercial Union bears the burden of proving exclusion. *Brodkin*, 265 Cal.Rptr. at 713.

■ Commercial Union insists that its "defective maintenance" exclusion precludes coverage for the negligence of the fungicide manufacturers.[10] In relevant part, that exclusion reads:

> [Commercial Union] will not pay YOU for loss or damage caused by, resulting from, contributed to, or aggravated by faulty, inadequate, or defective ... Maintenance ... of property whether on or off the insured premises by any person or organization. However, this exclusion only applies if a peril otherwise excluded by this policy substantially contributes to the loss. . . .

Commercial Union argues that Berry defectively maintained her property when she flushed the fungicides through her irrigation pipes, and that a peril otherwise excluded by this policy-deterioration-"substantially contribute[d] to the loss" of her pipes; thus, it claims, the damage is excluded under the terms of the policy.

We do not agree. To begin with, the plain language of the policy does not cover Berry's actions. Even if we assume that Berry was maintaining her property at the time she flushed the fungicides through the irrigation pipes, her act of maintenance was not a "defective" one because the fungicide manufacturers had failed to warn her of the possible consequences of flushing the copper hydroxide based chemicals through her aluminum pipes; she could not have been negligent in doing so and we will not read the exclusion to make her strictly liable for the negligence of other persons. Nor does the plain language of the policy exclude the

---

**9.** That the deterioration might also be classified as "corrosion," another excluded peril, is irrelevant in light of our conclusion that the "efficient proximate cause" is the fungicide manufacturers' negligence.

Our conclusion is not inconsistent with California case law holding that "deterioration" or "corrosion" of pipes due to natural contact with the soil is excludable under a policy having "deterioration" and "corrosion" exceptions. *See Brodkin*, 265 Cal.Rptr. 710 (holding that corrosion caused by contact between soil and foundation of the house is the type of loss the exclusion for deterioration was meant to cover). We be-

lieve that deterioration of pipes caused by natural contact with the soil is wholly different from deterioration of pipes caused by the introduction of harmful chemicals.

**10.** Commercial Union also argues that the failure to warn is a "defect," and that the policy excludes "defective property." While we agree with Commercial Union's first assertion, we are unable to agree with its second because the plain language of the policy does not exclude coverage of "defective property." The only exclusion mentioning "defective" and "property" is the exclusion for "defective maintenance of property" which we discuss in the text.

manufacturers' negligence in failing to warn; they were not "maintaining property" and are therefore outside of the exclusion.

■ Commercial Union argues in the alternative that there is insufficient evidence of the manufacturers' negligence. While negligence is usually a question of fact, it is a question of law where the facts are undisputed. *Blackwell v. Phelps Dodge Corp.*, 157 Cal.App.3d 372, 203 Cal.Rptr. 706, 709 (1984). Under California law, "a manufacturer . . . of a product is required to give warnings of any dangerous propensities in the product, or in its use, of which he knows, or should know, and which the user of the product would not ordinarily discover." *Groll v. Shell Oil Co.*, 148 Cal.App.3d 444, 196 Cal.Rptr. 52, 54 (1983). Here, the parties have stipulated that the copper hydroxide based fungicides are destructive to aluminum piping. They have also agreed that this is a danger of which the manufacturers could have-and we infer should have-known. Because the manufacturers did not include warnings, we find them negligent under *Groll.*

### III.

Because we have concluded that the fungicide manufacturers' failure to warn was the "proximate efficient cause" of the damage to Berry's irrigation pipes, and that it is a peril covered by the policy, we REVERSE the district court's summary judgment in favor of Commercial Union and instruct the court to enter judgment in favor of Berry.