# IN THE SUPREME COURT OF IOWA

No. 13–0124

Filed March 20, 2015

Amended June 1, 2015

**AMISH CONNECTION, INC.,**

Appellant,

vs.

**STATE FARM FIRE AND CASUALTY COMPANY,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

Property insurer seeks further review of court of appeals decision reversing summary judgment upholding denial of coverage for damage from rainwater spilling from corroded drainpipe that failed during storm. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT SUMMARY JUDGMENT AFFIRMED.**

Samuel C. Anderson and Joseph G. Martin of Swisher & Cohrt, P.L.C., Waterloo, for appellant.

Mark W. Thomas of Grefe & Sidney, P.L.C., Des Moines, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether a business insurance policy covers water damage inside a building resulting when a corroded interior drainpipe bursts during a summer rainstorm. The pipe carried rainwater from the roof to a storm sewer. The policy only insures damage "caused by rain" if an insured event first ruptures the roof or exterior walls to allow the rain to enter or if the damage results from melting ice or snow. The district court granted summary judgment for the insurer, concluding the water damage was caused by rain. The court of appeals reversed, concluding that damage from "rainwater" flowing from the broken interior drainpipe is not damage "caused by rain." We granted the insurer's application for further review.

This case presents our first opportunity to adjudicate coverage claims under a rain limitation in an insurance policy. For the reasons explained below, we conclude the unambiguous language of the rain limitation precludes coverage for the damage caused by the rainwater escaping the ruptured interior drainpipe. We, like the district court, also reject the insured's alternative argument that coverage is available because the damage resulted from the "breaking or cracking of any part of a system containing water or steam." That argument fails because the policy does not provide coverage for damage "caused by rain," *even if* a system containing water was involved. We therefore vacate the decision of the court of appeals and affirm the district court's summary judgment in favor of the insurer.

## I. Background Facts and Proceedings.

Amish Connection, Inc. leased space in Crossroads Shopping Mall in Waterloo, where it operated the Amish Connection Store. In 2008, Amish Connection moved into Suite 102. This litigation arises from the

failure of a leaky four-inch cast-iron drainpipe that ran above the ceiling tiles and along the interior back wall. This pipe connected to the rooftop drains and carried rainwater down and through the interior of the building to a storm sewer. During heavy rains, leaking rainwater routinely ran down the back wall of the suite. To address the leakage, mall management installed a makeshift wooden trough to catch the rainwater from the back wall and direct it toward a drain. The drainage tile and pipe system in Suite 102 showed "trails of rust left by years of water leak issues." The drainpipe was hidden from the tenant's view by ceiling tiles and wallboard, and Amish Connection was unaware that it leaked. The drainpipe itself was "extremely rusty" before it failed. Subsequent photos show extensive corrosion on the pipe, especially where it joined the wall.

In May 2010, the owner of Amish Connection approached the mall manager about closing the store until November "because business was bad." New lease contracts were prepared to allow Amish Connection to close its business to the public through October and reopen November 1. During that period, Amish Connection would continue paying rent for Suite 102 and store property there. On June 14, the new lease agreements were executed. It rained heavily that night. The rainstorm caused no damage to the roof, windows, or exterior walls of the building. The next morning, however, the mall maintenance staff discovered the interior drainpipe had failed, flooding the back room of Suite 102 with up to several inches of rainwater and soaking the carpet in much of the front showroom. The rainwater caused substantial damage to Amish Connection's office, bathroom, and property stored there, including its samples, inventory, office supplies, and business records.

Amish Connection promptly submitted a claim under its business insurance policy with State Farm Fire and Casualty Company (State Farm).  Section I of the policy, entitled "**LOSSES INSURED AND LOSSES NOT INSURED**," provides:

> We insure for accidental direct physical loss to property covered under this policy unless the loss is:
>
> 1.    limited in the **PROPERTY SUBJECT TO LIMITATIONS** section; or
>
> 2.    excluded in the **LOSSES NOT INSURED** section that follows.

The relevant provisions of those two sections state:

> **PROPERTY SUBJECT TO LIMITATIONS**
>
> We will not pay for loss:
>
> . . . .
>
> 6.    to the interior of any building or structure, or the property inside any building or structure, caused by rain, snow, sleet, ice, sand, or dust, whether driven by wind or not, unless:
>
> > a.    the building or structure first sustains damage by an insured loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
> >
> > b.    the loss is caused by thawing of snow, sleet or ice on the building or structure . . . .
>
> . . . .
>
> **LOSSES NOT INSURED**
>
> . . . .
>
> 2.    We do not insure for loss either consisting of, or directly and immediately caused by, one or more of the following:
>
> > . . . .
> >
> > d.    smog, wear, tear, rust, corrosion, fungus, mold, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.
> >
> > But if accidental direct physical loss by any of the "Specified Causes of Loss" or by

> building glass breakage results, we will
> pay for that resulting loss . . . .

The definitions section of the policy defined "Specified Causes of Loss" to include:

> 14.    water damage, meaning accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

On June 16, State Farm declined Amish Connection's claim based on the rain limitation in paragraph 6 of the property subject to limitations section. On December 27, Amish Connection filed a civil action against its landlord and the mall operator alleging they had concealed the water infiltration problem the tenant discovered when ceiling tiles were removed after the drainpipe failed. Amish Connection alleged those defendants "took insufficient efforts to remedy the water infiltration problem and Defendants' actions caused further water damage to the lower level unit #102." The lawsuit further alleged the mall owner and operator "were guilty of gross negligence and willful misconduct by renting [Suite 102] while knowing of, not disclosing, and not taking remedial action to resolve the significant long-standing water problems."

On November 23, 2011, counsel for Amish Connection wrote to State Farm asking it to reconsider its denial of the claim and provide coverage for the water damage. State Farm responded on December 22 that it would investigate further and cited paragraph 2(d) excluding coverage for "rust, corrosion, . . . and deterioration," in addition to the rain limitation in paragraph 6. On January 3, 2012, State Farm sent another letter confirming its denial of coverage based on both provisions. On January 20, Amish Connection moved to amend its petition to add

State Farm as a defendant to a claim of breach of its insurance contract. Amish Connection later dismissed its claims against the mall owner and operator. The lawsuit proceeded against State Farm alone.

On July 27, State Farm filed a motion for summary judgment based on paragraph 6 excluding coverage for "damage caused by rain." Amish Connection resisted, arguing that the water damaging the interior of Suite 102 was no longer "rain," and the actual cause of the loss was the failure of the drainage pipe, falling within coverage under paragraph 14. On October 18, the district court granted State Farm's motion based on paragraph 6, stating "as a matter of law the water running through the pipe which caused the loss was rainwater." Amish Connection moved for a more specific ruling to address its alternative argument under the exception to the rust-and-corrosion exclusion for water damage resulting from the "breaking or cracking of any part of a system or appliance containing water or steam." State Farm resisted, arguing that the ruling on the rain limitation was dispositive under the language of the insuring agreement that provides coverage for accidents "unless the loss is: 1. limited [by the rain limitation]; **or** 2. Excluded in the Losses Not Insured section." On December 20, the district court agreed with State Farm's interpretation and denied Amish Connection's motion, stating:

> The policy reads that "We insure for accidental physical loss to property covered under this policy unless the loss is: 1) Limited in the PROPERTY SUBJECT TO LIMITATIONS section; *or* 2) Excluded in the LOSSES NOT INSURED section that follows." (Emphasis Added). Therefore, if a loss is excluded under either the PROPERTY SUBJECT TO LIMITATIONS section or the LOSSES NOT INSURED section, then it is excluded, and analysis under the other section is not necessary. Therefore, the Court declines to rule on whether the LOSSES NOT INSURED provision applies, as the loss is already excluded by the other section.

Amish Connection appealed, and we transferred the case to the court of appeals. The court of appeals reversed the summary judgment, concluding the "district court erred by finding the rain limitation [in paragraph 6] was applicable to this case." The court of appeals, citing dictionaries and cases from other jurisdictions, distinguished "rain" from "rainwater":

> The definitions of "rain" and "rainwater," although similar, encompass two different points in time. As water is falling, it is considered "rain." After it has fallen—and, as here, been collected on a rooftop and channeled into pipes for transport to a storm sewer—it is considered "rainwater.". . . While the water emitting from the burst pipe may fall within the definition of "rainwater," it does not fall within the definition of "rain". Because loss caused by "rainwater" is not excluded or otherwise limited under the policy, the district court erred in interpolating the term "rainwater" into the policy and concluding the interpolated term was unambiguous.

The court of appeals further concluded to the extent the limitation of coverage for damage "caused by rain" in paragraph 6 is ambiguous, it must be construed against State Farm. The court of appeals determined the parties' arguments under other terms of the policy "are best addressed by the district court in the first instance" on remand. We granted State Farm's application for further review.

## II. Standard of Review.

We review a district court's summary judgment ruling that interprets an insurance policy for correction of errors at law. *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 501 (citing Iowa R. Civ. P. 1.981(3)). We may affirm summary judgment on a conflict "concerning only the legal consequences of undisputed

facts." *Id.* We examine the record in the light most favorable to the nonmoving party. *Id.*

### III. Analysis.

This case presents our court's first opportunity to adjudicate an insurance claim under a policy limiting coverage for losses "caused by rain." The facts are undisputed as to the source of the water damage—a corroded interior drainpipe burst during a rainstorm, flooding the rooms inside with rainwater. The fighting issue is whether the damage was "caused by rain" within the meaning of paragraph 6 of the limitations of coverage. Neither side has offered any extrinsic evidence on the meaning of the insurance contract. Accordingly, its interpretation is for the court to decide. *See id.* ("Policy interpretation is always an issue for the court, unless we are required to rely upon extrinsic evidence or choose between reasonable inferences from extrinsic evidence."). We conclude State Farm was entitled to summary judgment in its favor based on the limitation of coverage. Our holding is consistent with the decisions of other courts construing equivalent policy language.

Our rules governing the construction and interpretation of insurance policies are well-settled. "The cardinal principle . . . is that the intent of the parties at the time the policy was sold must control." *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998). Except in cases of ambiguity, we determine "the intent of the parties by looking at what the policy itself says." *Boelman*, 826 N.W.2d at 501. If a term is not defined in the policy, we give the words their ordinary meaning. *Id.* "We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase." *Id.*

"[A] policy is ambiguous if the language is susceptible to two *reasonable* interpretations" when the contract is read as a whole. *Id.* "If the policy is ambiguous, we adopt the construction most favorable to the insured." *Id.* at 502. "An insurance policy is not ambiguous, however, just because the parties disagree as to the meaning of its terms." *Id.* Moreover, " '[a]mbiguity is not present merely because the provision "could have been worded more clearly or precisely than it in fact was." ' " *Am. Family Mut. Ins. Co. v. Corrigan*, 697 N.W.2d 108, 114 (Iowa 2005) (quoting *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 824 (Iowa 1987)). "If an insurance policy and its exclusions are clear, the court 'will not "write a new contract of insurance" ' for the parties." *Boelman*, 826 N.W.2d at 502 (quoting *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 682 (Iowa 2008)). We construe exclusions strictly against the insurer. *Id.* Nevertheless, "we must enforce unambiguous exclusions as written." *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216, 222 (Iowa 2007).

**A. The Rain Limitation.** Applying these principles here, we conclude the rain limitation in paragraph 6 unambiguously defeats coverage for the rainwater damage to Suite 102. This provision states that subject to two exceptions the insurer "will not pay for loss . . . to the interior of any building . . . or the property inside . . . caused by rain." Neither exception applies. The first allows coverage if "the building . . . first sustains damage by an insured loss to its roof or walls through which the rain . . . enters." This exception would allow coverage, for example, if a tornado dropped a tree on the roof, opening a hole through which rain entered. Amish Connection alleges no damage to the building's roof or walls through which rain entered Suite 102. Rather, the rainwater damage occurred when the interior drainpipe failed. The

second exception to the rain limitation provision allows coverage if "the loss is caused by thawing of snow, sleet or ice on the building or structure." The June rainstorm involved no thawing of precipitates.

Amish Connection acknowledges these exceptions do not apply, but argues the water damage in suite 102 was not "caused by rain" within the meaning of paragraph 6. It contends the water escaping the ruptured drainpipe was no longer "rain" but rather "rainwater." The court of appeals agreed, stating, "We think it fair to say that a reasonable person standing in the interior of a shopping mall underneath a burst drainpipe would not conclude that he or she was standing in the 'rain.' " True enough. But, "rainwater" unquestionably is "caused by rain," and it is undisputed the water damage occurred during a rainstorm when the drainpipe ruptured to spill rainwater into Suite 102. We hold as a matter of law that water damage is "caused by rain" within the meaning of paragraph 6 of the limitations of coverage when an interior drainpipe fails during a rainstorm and releases rainwater inside the building.

Under common parlance, damage caused by "rainwater" is "caused by rain." If water is only considered rain while it is falling and becomes rainwater after it strikes a surface then the policy's limitation on coverage for damage "caused by rain" would be eviscerated. Water does not damage property while merely falling through the air, but only after it strikes a surface. Under the court of appeals' interpretation, the rain limitation in the policy would be superfluous, and the coverage for rainwater damage would extend to leaky roofs and skylights. *See Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

State Farm argues its commercial property insurance policy is not intended to provide coverage for damage resulting from deferred maintenance. Other courts have agreed. In *Petrick v. State Farm Fire & Casualty Co.*, the New Jersey appellate court affirmed summary judgment for the insurer based on a rain limitation and noted insurance is not intended to pay costs resulting from poor maintenance:

> If that coverage were found to exist, State Farm would become the insurer of all water damage to personalty caused by inadequate or delayed maintenance of a premises. That is clearly a risk that the insurer did not agree and could not reasonably be found to assume. We will not write for plaintiffs a better policy of insurance than the one purchased.

No. A-1152-09T3, 2010 WL 3257894, *5 (N.J. Super. Ct. App. Div. Aug. 13, 2010) (per curiam); *see also Dashtpeyma v. Liberty Mut. Grp.*, 569 F. App'x 886, 887 (11th Cir. 2014) (per curiam) (affirming summary judgment for insurer based on rain limitation "when rain water leaked through rotted wood on window sills and pieces of siding"). It is undisputed that the drainpipe that failed in Suite 102 was rusty, corroded, and leaky for a long period preceding the rainstorm during which it ruptured. This is not an insured loss under the rain limitation in State Farm's policy.

Other courts have reached the same result we do under equivalent policy language. In *Horizon III Real Estate v. Hartford Fire Insurance Co.*, the insured's office basement flooded during a torrential rainstorm that overwhelmed the building's interior drainpipes or the connecting storm sewer system. 186 F. Supp. 2d 1000, 1002 (D. Minn. 2002). The insurance policy contained a rain limitation like State Farm's that provided no coverage for damage to the "interior of any building . . . caused by or resulting from rain." *Id.* at 1005. The insured, like Amish

Connection, argued the rain "stopped being 'rain' when it touched the roof," as it was no longer falling from the sky. *Id.* at 1006. The federal district court rejected that argument, concluding the water damage "was caused by or resulted from, a torrential rain storm" within the meaning of the "unambiguous" rain limitation. *Id.* at 1006–07. Accordingly, the court entered summary judgment for the insurer. *Id.* at 1002, 1009.

The Nebraska Court of Appeals, applying the same rain limitation in a business policy, likewise rejected the argument that rain is no longer rain once it lands on a rooftop:

> [The insured] first argues that the damage he suffered was not caused by rain, on the theory that the water which entered his building had lost its nature as "rain" once it entered the building. We are unswayed by this tortured reading of a clearly worded exclusion. [The insured] does not deny that rain fell and that the water resulting from that rain, however characterized, entered the building. The policy excludes damage "caused by or resulting from rain," which is precisely what happened in this case.

*Einspahr v. United Fire & Cas. Co.*, No. A-99-371, 2000 WL 758654, at *4, *6 (Neb. Ct. App. June 13, 2000) (affirming summary judgment for insurer); *accord Stufflebean v. Fireman's Fund Ins. Co.*, 710 S.W.2d 931, 933 (Mo. Ct. App. 1986) (holding rain limitation excluded coverage for water damage resulting from broken gutter); *Kennel Delites, Inc. v T.L.S. NYC Real Estate, LLC*, 852 N.Y.S.2d 130, 130–31 (App. Div. 2008) (applying exclusion for damage "caused by rain" when rainwater leaked into building after debris clogged roof drain); *U.S. Fire Ins. Co. v. Matchoolian*, 583 S.W.2d 692, 694 (Tex. Ct. App. 1979) (same). *But see Fidelity Coop. Bank v. Nova Cas. Co.*, 726 F.3d 31, 40–41 (1st Cir. 2013) (holding water damage resulting from clogged roof drain was covered under amendatory flood endorsement notwithstanding rain limitation in original policy); *id.* at 42 (Kayatta, J., concurring in part and dissenting

in part) ("[C]overage would not exist here but for the amendatory endorsement for flood coverage.").

The court of appeals relied on *State Farm Fire & Casualty Co. v. Paulson* for its conclusion that rain is "water falling from the sky." 756 P.2d 764, 767 (Wyo. 1988) (" 'Rain' is ordinarily and commonly thought of as water falling from the sky. After it stops falling, one does not say that it is 'raining' . . . ."). That case is inapposite. In *Paulson,* the insured's basement windows were broken by hail, allowing water from a rainstorm to flow in through the broken windows. *Id.* at 764. The policy contained a separate exclusion for damage from "flood [or] surface water." *Id.* at 765. Under the plain language of this exclusion, water from the rainstorm that landed on nearby higher ground was "surface water" when it flowed into the basement windows. *Id.* at 771–72. The *Paulson* court distinguished rain from rainwater to hold the surface water exclusion precluded coverage, not to avoid the rain limitation. *See id.*

The court of appeals also relied on *Unobskey v. Continental Insurance Co.,* which is also inapposite. 86 A.2d 160 (Me. 1952). In *Unobskey,* the outside door to a retail shop was "torn open" during "a very severe storm with high wind and heavy rain." *Id.* at 160–61. "[A] 'river' of water went through the doorway" and damaged inventory stored in the basement. *Id.* at 161. The policy covered damage from wind but excluded coverage for damage from " 'high water or overflow whether driven by wind or not.' " *Id.* at 163. The court affirmed judgment for the insurer because the policy "did not cover the damage caused by running surface water from rainstorm and melting snow[] that overflowed the catch basins and the parking area." *Id.* at 164. Such cases adjudicating surface water exclusions are inapplicable regardless of whether the water

causing damage accumulated in a rainstorm.[1]  The rainwater causing damage to Suite 102 had not reached the outside ground to become surface water.  Flooding from surface water presents a different risk than rainwater landing on a building.

**B. The "Water System" Exception to the Rust-and-Corrosion Exclusion.**  Because the rain limitation is dispositive, we, like the district court, reject Amish Connection's alternative argument for coverage based on paragraph 14 of the definitions.  That provision defines "Specified Causes of Loss"[2] to include: "water damage, meaning accidental

---

[1]The cases that Amish Connection relies upon are likewise inapposite.  Amish Connection cites two cases for the proposition that water may change its character by entering an artificial channel.  *Heller v. Fire Ins. Exch.*, 800 P.2d 1006, 1009 (Colo. 1990) (concluding that runoff is no longer surface water when diverted into trenches); *Georgetowne Square v. U.S. Fid. & Guar. Co.*, 523 N.W.2d 380, 386–87 (Neb. Ct. App. 1994) (holding water ceases to be "surface water" when forced into an artificial trench).  Both of these cases deal with surface water rather than rainwater, and both rely on precedent in their respective jurisdictions holding that "surface water" is not channeled artificially.  *See Heller*, 800 P.2d at 1008–09 & nn.3–10 (surveying caselaw); *Georgetowne Square*, 523 N.W.2d at 385 ("The cases in Nebraska also emphasize that the definition of surface water involves the 'natural' drainage of such water.").  By contrast, other courts have held that surface water does not change status for coverage purposes when it flows into a man-made channel or underground.  *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 969–70 (D.C. Ct. App. 1999) (concluding water flowing from a patio remained "surface water" even though it passed over an artificial channel intended to direct the water's course); *State ex rel. State Fire & Tornado Fund of N.D. Ins. Dep't v. N.D. State Univ.*, 694 N.W.2d 225, 233 (N.D. 2005) (stating "surface water does not lose its character as surface water simply by being artificially channeled underground").

[2]The State Farm policy uses the term "Specified Causes of Loss" in some provisions and the term "insured loss" in others.  We read the policy as a whole. *Boelman*, 826 N.W.2d at 501.  The terms are not coextensive.  *See Chiodo v. Section 43.24 Panel*, 846 N.W.2d 845, 853 (Iowa 2014) ("If the drafters intended the two concepts to be coextensive, different words would not have been used."); *Andover Vill. Ret. Cmty. v. Cole*, No. 2013-A-0057, 2014 WL 5802674, at *3 (Ohio Ct. App. 2014) ("Generally in interpreting a statute or a contract, we presume that the use of different words indicates an intention that the words possess different meanings.").

Rather, it is clear from reading State Farm's policy as a whole that the terms "Specified Causes of Loss" and "insured loss" have different meanings, and a specified cause of loss is not a *covered* loss under some circumstances.  For example, the defined specified causes of loss include the "weight of snow, ice or sleet" in paragraph 13, yet the policy specifically excludes losses to "gutters and downspouts caused by weight of

discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam." Amish Connection contends the drainpipe that burst is a "system or appliance containing water." If so, the water damage to Suite 102 would fall within an exception to the separate exclusion for "rust, corrosion, [and] deterioration."[3] But, standing alone, paragraph 14 would not create coverage for rain damage because an exception to an exclusion does not create coverage that otherwise is lacking. As the Indiana Court of Appeals observed:

> In general, "an exception to an exclusion cannot create coverage where none exists. Exclusion clauses do not grant or enlarge coverage; rather, they are limitations on the insuring clause." "In simplistic terms, the process is such: if the insuring clause does not extend coverage, one need look no further. If coverage exists, exclusions must then be considered. If an exclusion excludes coverage, an exception to the exclusion may re-grant coverage."

---

snow, sleet or ice" in limitation 9. Thus, merely because a matter is included within the policy's defined "Specified Causes of Loss" does not mean it cannot be subject to a separate limitation or exclusion.

[3]State Farm previously relied on that exclusion in addition to the rain limitation in denying the insurance claim. At oral argument, counsel for State Farm noted it was no longer relying on that exclusion found in the "**LOSSES NOT INSURED**" section of the policy, which provides:

> 2. We do not insure for loss either consisting of, or directly and immediately caused by, one or more of the following:
>
> . . . .
>
> d. smog, wear, tear, rust, corrosion, fungus, mold, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.
>
> *But if accidental direct physical loss by any of the "Specified Causes of Loss" or by building glass breakage results, we will pay for that resulting loss . . . .*

*Hartford Cas. Ins. Co. v. Evansville Vanderburgh, Pub. Library*, 860 N.E.2d 636, 646 (Ind. Ct. App. 2007) (quoting *Amerisure Inc. v. Wurster Constr. Co.*, 818 N.E.2d 998, 1005 (Ind. Ct. App. 2004) (citation omitted)).

Unlike the exclusion for rust or corrosion, the rain limitation contains no exception for "Specified Causes of Loss." Yet, other provisions in the "**PROPERTY SUBJECT TO LIMITATIONS**" section of the policy do include exceptions for "Specified Causes of Loss." For example, on the same page, the policy provides:

> We will not pay for loss: . . .
>
> 2.    to fragile articles, such as glassware, statuary . . . and other articles of a brittle nature, if broken, unless caused by any of the 'Specified Causes of Loss' or by building glass breakage.

If the State Farm policy were intended to cover water damage from a breaking gutter or drainpipe releasing rainwater, then the rain limitation in paragraph 6 likewise would have included an exception for specified causes of loss such as a breaking pipe in a water system. *See Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 194 (Iowa 2011) (concluding that selective placement of phrase in one subsection but not another meant the phrase did not apply where it was omitted). Coverage for rainwater damage is lacking absent such an applicable exception within the rain limitation.

We assume for the sake of argument the interior drainpipe that failed while carrying rainwater from the roof to the storm sewer may be considered "part of a system . . . containing water" within the meaning of paragraph 14. *Cf. Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 971 (D.C. Ct. App. 1999) (applying surface-water exclusion to reject coverage claim based on similar "water system" provision when gutter failure during rainstorm contributed to water damage caused by

rainwater flowing from patio). We also assume the water damage in this case would not have occurred but for both the rainstorm and the failure of the interior drainpipe. That is, the breaking of the drainpipe was a concurrent cause of the water damage to the office and its contents.

Nevertheless, paragraph 14 does not provide coverage because State Farm's policy effectively has an anticoncurrent-cause provision. This means the rain limitation controls regardless of whether the breaking drainpipe is considered a concurrent cause of the rainwater damage. The operative anticoncurrent-cause language turns on the word "or" in the lead paragraph of Section I of the policy, entitled "**LOSSES INSURED AND LOSSES NOT INSURED**":

> We insure for accidental direct physical loss to property covered under this policy unless the loss is:
>
> 1. limited in the **PROPERTY SUBJECT TO LIMITATIONS** section; *or*
> 2. excluded in the **LOSSES NOT INSURED** section that follows.

(Emphasis added.) The district court quoted and relied on this provision in denying Amish Connection's motion for a more specific ruling on summary judgment. The "or" in this provision is disjunctive. *See Denison Mun. Utils. v. Iowa Workers' Comp. Comm'r*, 857 N.W.2d 230, 236 (Iowa 2014) (ascribing a disjunctive meaning to the word "or" between statutory provisions); *Monroe County v. Int'l Ins. Co.*, 609 N.W.2d 522, 525 (Iowa 2000) (holding disjunctive "or" between alternative provisions of exclusion defeated coverage even though only one alternative applied). As the district court correctly concluded, this means there is no coverage under the State Farm policy for property damage resulting under circumstances triggering *either* a limitation of loss in the first numbered paragraph *or* an exclusion in the second. That is, if the

rain limitation applies, it does not matter whether this property loss otherwise falls within the "water system break" exception to the rust exclusion.

This makes sense. Water damage resulting from a breaking sprinkler or hot water pipe or radiator could be covered despite the rust-and-corrosion exclusion, but not water damage resulting from a breaking gutter or roof drainpipe for rainwater subject to the rain limitation. Why the difference? Because the insurer expects the property owner to keep the rain out and writes the policy to avoid paying for damage from rain resulting from deferred maintenance. *See Petrick*, 2010 WL 3257894, at *5 (applying rain limitation as intended to avoid insuring for damage resulting from deferred maintenance). Under Amish Connection's interpretation, rain damage resulting from breaking gutters or drainpipes would be covered, and the "or" in Section I would be replaced with the conjunctive "and" such that a loss is covered unless it is *both* within the rain limitation *and* (not "or") excluded separately. We will not rewrite clear policy language. *See Boelman*, 826 N.W.2d at 502. Rather, "we must enforce unambiguous exclusions as written." *Bituminous Cas. Corp.*, 728 N.W.2d at 222.

The anticoncurrent-cause language in State Farm's policy is enforceable. *See, e.g.*, *TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997) (enforcing anticoncurrent-cause provision under Missouri law, noting "the most analogous and persuasive cases from other states recognize that parties may contract out of application of the efficient proximate cause doctrine"); *see generally* Dale Joseph Gilsinger, *Validity, Construction, and Application of Anticoncurrent Causation (ACC) Clauses in Insurance Policies*, 37 A.L.R.6th 657 (2008 & Supp. 2014). Some insurance policies include

more expansive anticoncurrent-cause provisions than State Farm's policy. *See id.* at 669–70 (quoting standard long-form and short-form provisions). The fact an insurer could have made an exclusion more explicit does not make the existing language ambiguous. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 209–10 (5th Cir. 2007) (enforcing flood exclusions for water damage allegedly resulting from the negligent design, construction, or maintenance of flood-protection levies); *Corrigan*, 697 N.W.2d at 114. Indeed, in *Corrigan*, we specifically held the omission of an anticoncurrent-cause provision in the liability section of the homeowners' policy did not create ambiguity even though such a provision was included in the property insurance section of the same policy. 697 N.W.2d at 114–15. Thus, as the district court correctly concluded, because the rain limitation applies, there is no coverage regardless of whether the breaking drainpipe falls within the exception to the separate rust-and-corrosion exclusion.

When insurance policies lack such an anticoncurrent-cause provision, we have held an accident that has two independent causes, one of which is covered and one excluded, is covered unless the excluded cause is the sole proximate cause of injury. *See, e.g., Grinnell Mut. Reins. Co. v. Emp'rs Mut. Cas. Co.*, 494 N.W.2d 690, 693–94 (Iowa 1993) (holding general liability insurer covered personal injury claim arising from student's fall from bus because school district's negligent supervision of loading fell outside scope of motor vehicle exclusion); *Kalell v. Mut. Fire & Auto. Ins. Co.*, 471 N.W.2d 865, 868 (Iowa 1991) ("We hold that, when two independent acts of negligence are alleged, one vehicle-related and one not vehicle-related, coverage is still provided under the homeowners policy unless the vehicle-related negligence is the sole proximate cause of the injury. Under Iowa law, of course, more than

one proximate cause may exist."). In *Kalell,* the homeowners policy excluded coverage for bodily injury arising out of use of a motor vehicle owned by the insured. *Id.* at 866. The victim was injured when struck by a tree limb the insured was pulling off a tree with a rope attached to his pickup truck. *Id.* We noted coverage clearly would be outside the scope of the exclusion if people had pulled on the ropes manually without using the vehicle. *Id.* at 868. We concluded pulling the limb with a rope and use of the truck were independent acts and held the trier of fact must determine whether use of the motor vehicle was the sole proximate cause of the injury. *Id.* at 869. These cases do not help Amish Connection because neither case involved an anticoncurrent-cause provision and paragraph 14 is not an independent coverage grant, but rather merely removes breaking pipes from the rust-and-corrosion exclusion.

More recently, in *Corrigan,* parents of a child injured in day care sued the day-care providers, who sought liability coverage under their homeowners policy. 697 N.W.2d at 109–110. The policy excluded coverage for "bodily injury . . . arising out of . . . violation of any criminal law for which any insured is convicted." *Id.* at 110. One insured was convicted of child endangerment. *Id.* at 109–10. Another was sued for negligent supervision. *Id.* at 110. We held the insurer was entitled to summary judgment based on the criminal act exclusion and distinguished *Kalell,* noting that the covered and excluded acts were not "independent" because to prove negligent supervision, one had to prove the underlying tort by the person who was not properly supervised. *Id.* at 112–13. That is, there would have been no injury without the excluded criminal act. *See id.* Similarly, there would have been no water damage here but for the rainfall, and damage caused by this rain is not

covered. This case is more like *Corrigan* than *Kalell.* In any event, we resolve the coverage claims based on the unambiguous contract language, not tort causation principles.

Amish Connection relies heavily on a New York trial court decision, *Wider v. Heritage Maintenance, Inc.*, 827 N.Y.S.2d 837 (Sup. Ct. 2007). In that case, a third-party contractor working on the façade of the insured's building negligently placed tarps on scaffolding next to the building that collected rainwater. *Id.* at 842. The tarps were not placed on the scaffolding to keep rain out of the building, and "in the tarps' absence, the rain would have merely fallen on the ground." *Id.* at 845. The tarps were attached to ornaments on the façade that broke off from the weight of the pooled water, which then seeped in to damage the interior of the building. *Id.* at 842. The insurer failed to show that the tarps collapsed *during* a rainfall. *Id.* at 844. The trial court acknowledged "it is clear that the Policy was not intended to cover damage to the interior of the Building stemming from rain." *Id.* at 845. The trial court distinguished water damage from rain that directly enters a building during a rainstorm from damage resulting from pooled "surface water" that had collected in the tarps. *Id.* at 844. The trial court denied the insurer's motion for summary judgment on the rain limitation, stating:

> The ordinary business person purchasing the Policy at issue here would not have expected the Rain Limitation to apply to an incident in which a temporary, man-made structure collected rainwater, diverting it from the ground and into the policyholder's Building. Therefore, the Rain Limitation cannot be used to disclaim covered for damage and losses stemming from the September Incident.

*Id.* at 845. *Wider* is distinguishable from this case in which the drainpipe, installed to carry rainwater falling on the roof to the storm

sewer, failed and spilled rainwater as it flowed down during the rainstorm. Nor are we persuaded by *Tento International, Inc. v. State Farm Fire & Casualty Co.*, which held a contractor's negligent failure to temporarily cover a hole it opened in the insured's roof, rather than rain, was the efficient proximate cause of water damage to electrical equipment within the building. 222 F.3d 660, 662–63 (9th Cir. 2000) (applying California law). The appellate court construed a separate provision of the policy to allow coverage for property damage caused by the negligence of a third-party contractor. *Id.* at 663. By contrast, the rain limitation in State Farm's policy contains no applicable exception for the negligence of a third party. In any event, *Wider* and *Tento International* are trumped by our decision in *Corrigan,* which we decline to overrule.

We hold that under the unambiguous terms of State Farm's policy, damage from rainwater released by a breaking drainpipe during a rainstorm is not an insured loss because the damage is caused by rain within the meaning of the rain limitation, even though the breaking drainpipe is a concurrent cause.

**IV. Disposition.**

For those reasons, the district court correctly granted State Farm's motion for summary judgment based on the rain limitation. We therefore vacate the decision of the court of appeals and affirm the summary judgment entered by the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT SUMMARY JUDGMENT AFFIRMED.**

All justices concur except Hecht, Wiggins, and Appel, JJ., who dissent.

**HECHT, Justice (dissenting).**

I respectfully dissent. While I agree with my colleagues in the majority that the policy exclusion for losses "caused by rain" is an important aspect of a proper analysis of this case, I disagree that our disposition turns on the perceived distinction between rain and rainwater.

It is important to understand precisely the loss for which Amish Connection seeks coverage. Amish Connection does not claim coverage for the cost of repairing or replacing the failed drain pipe. *Cf. Berry v. Commercial Union Ins. Co.*, 87 F.3d 387, 388 (9th Cir. 1996) (noting the damage for which coverage was sought was a damaged irrigation pipe); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 593–95 (7th Cir. 1987) (affirming summary judgment granted to the insurer based on a corrosion exclusion when the only damage was the cost of repairing a corroded reactor used to extract papermaking chemicals). Rather, the loss was water damage to Amish Connection's inventory, furnishings, equipment, and documents after the pipe burst.

Water damage is among the "Specified Causes of Loss" covered by the policy. The policy definition of "water damage" expressly includes "accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam." Thus, the casualty Amish Connection suffered is a covered loss unless it falls within one of the narrowly construed limitations or exclusions. *See Farm & City Ins. Co. v. Gilmore*, 539 N.W.2d 154, 157 (Iowa 1995) ("Insurance policy exclusions are strictly construed against the insurer."); *see also Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 776 (Iowa 1993) ("[W]hen an exclusion acts to

withdraw a promised coverage, it must be clearly and explicitly defined.");
*Grinnell Mut. Reins. Co. v. Emp'rs Mut. Cas. Co.*, 494 N.W.2d 690, 693
(Iowa 1993) (noting exclusionary clauses "require a narrow or restrictive
construction"); *Kalell v. Mut. Fire & Auto. Ins. Co.*, 471 N.W.2d 865, 867
(Iowa 1991) ("[I]nsurance policies are adhesion contracts, and exclusions
will be strictly construed against the insurer.").

My colleagues in the majority conclude as a matter of law the
policy provides no coverage for Amish Connection's loss because it was
caused by rainwater. Because I believe a genuine issue of material fact
remains on the question whether the loss was in fact caused by rain or,
instead, by some other covered occurrence (or a combination of covered
and uncovered occurrences), summary judgment is inappropriate and
the case should proceed to trial.

"Causation has always been a troublesome concept for lawyers."
Banks McDowell, *Causation in Contracts and Insurance*, 20 Conn. L. Rev.
569, 569 (1988) [hereinafter McDowell]. Particularly troublesome are
instances of "dual or concurrent causation—where two or more
occurrences lead to a loss and at least one is covered under the terms of
a single insurance policy." *Id.* at 570 (footnotes omitted). In my view,
this case presents one such instance. Amish Connection suffered a loss
when a pipe burst during a heavy rainstorm. State Farm asserts the loss
was "caused by rain" because the pipe would not have failed without the
volume of water the storm produced. Yet, the summary judgment record
in this case leaves room for a reasonable fact finder to find the loss
Amish Connection suffered would not have occurred as a consequence of
the rain alone, but only because the pipe failed while the rainwater was
passing through it. In other words, a fact question remains whether the
loss might not have occurred but for the confluence of at least two

causes. *See* Randall L. Smith & Fred A. Simpson, *Causation in Insurance Law*, 48 S. Tex. L. Rev. 305, 312 (2006) ("Perils A and B, independent of each other, join in causing the loss, both perils being necessary to cause the loss since neither peril alone is sufficient to do so.").

"While the notion of causation is simple, the factual world to which it must be applied is not." McDowell, 20 Conn. L. Rev. at 573. Complexity arises "in situations of concurrent causation because one cause of the loss may be covered by an insurance policy and another cause either not covered or specifically excluded from coverage." Erik S. Knutsen, *Confusion About Causation in Insurance: Solutions for Catastrophic Losses*, 61 Ala. L. Rev. 957, 962 (2010) [hereinafter Knutsen]. This case presents a causation and coverage quandary: Water damage caused by accidental leakage is a "Specified Cause of Loss" under the policy, but losses "caused by rain" are excluded.

In concurrent causation scenarios, some jurisdictions utilize a "liberal approach" to coverage under which an entire loss is covered as long as it was caused in part by a covered occurrence. *See id.* at 976 & n.56 (listing the "minority of states" that follow this rule). Under this approach, if two events combine to cause the loss—one covered and one excluded—coverage exists even though the excluded event was a cause. While this rule "is not perfect," it "promulgates a fairer result in instances where two . . . concurrent causes produce the loss and neither on its own is sufficient to cause some harm." *Id.* at 984; *see also* Brendan R. Vaughan, Note, *Watered Down: Are Insurance Companies Getting Hosed in the Wind vs. Water Controversy?*, 2008 U. Ill. L. Rev. 777, 796 (2008) (acknowledging a benefit of the liberal approach is its "ease of use in situations where it is difficult to segregate independent causes to determine which one is . . . dominant").

Another approach is the "efficient proximate cause" test under which the fact finder evaluates competing concurrent but-for causes to determine which was the primary cause of the loss. *See* Knutsen, 61 Ala. L. Rev. at 974–75 (explaining this approach). This test *does* require a decision about which of two competing causes was dominant. *See Tento Int'l, Inc. v. State Farm Fire & Cas. Co.,* 222 F.3d 660, 662 (9th Cir. 2000) ("While the rain may have been the most immediate cause of [the] damages, the more important inquiry involves determining . . . the efficient proximate cause of the damage."). In this case, the "efficient proximate cause" test would require the fact finder to determine whether the magnitude of the rain event or the condition or capacity of the drainpipe was the primary cause of the pipe failure and Amish Connection's loss.

Finally, the "conservative approach" is a third analytical option. Under this approach, "if one cause in a causal chain is excluded from insurance coverage, the entire loss must be excluded from coverage, even if other causes may be covered by the policy." Knutsen, 61 Ala. L. Rev. at 972.

Although we have not consistently applied any of these tests in Iowa, we have followed principles from both the liberal approach and the efficient proximate cause approach. *See Grinnell Mut. Reins. Co.,* 494 N.W.2d at 691, 694 (concluding an insurer's exclusion of coverage for bodily injury "arising out of the ownership, . . . operation, use, loading or unloading of any automobile" did not preclude coverage for an injury sustained by a student while exiting a school bus because the school's alleged "negligent supervision leading to negligent loading of the bus was not vehicle-related and was, or could have been determined to be, a proximate cause"); *Kalell,* 471 N.W.2d at 868 ("We hold that, when two

independent acts are alleged, one vehicle-related and one not vehicle-related, coverage is still provided under the homeowners policy unless the vehicle-related negligence [that was excluded from coverage] is the sole proximate cause of the injury."); *Jordan v. Iowa Mut. Tornado Ins. Co. of Des Moines*, 151 Iowa 73, 84, 130 N.W. 177, 181 (1911) (using the phrase "efficient cause" and noting the proposition "[t]hat other . . . causes may also have contributed to the loss does not, of itself, relieve the [insurer] from responsibility"); *Bettis v. Wayne Cnty. Mut. Ins. Ass'n*, 447 N.W.2d 569, 571 (Iowa Ct. App. 1989) ("[W]e look not necessarily to the last act in the chain of events, but rather to the *predominant* cause which set in motion the chain of events causing the loss." (Emphasis added.)).

My research reveals no instance in which we have applied the approach styled as the "conservative approach." This should not come as a surprise given our adoption of principles protecting insureds' interests in litigation against their insurers. *See Grinnell Mut. Reins. Co.*, 494 N.W.2d at 693 ("Coverage clauses are construed differently than exclusionary clauses. When construing coverage clauses, the words . . . are given a broad, general and comprehensive meaning. Exclusionary clauses, however, require a narrow or restrictive construction." (Citation omitted.)); *Kalell*, 471 N.W.2d at 867 ("If an insurance policy is ambiguous, we construe it in the light most favorable to the insured; insurance policies are adhesion contracts, and exclusions will be strictly construed against the insurer."); *N. Star Mut. Ins. Co. v. Holty*, 402 N.W.2d 452, 454 (Iowa 1987) ("Where the meaning of terms in an insurance policy is susceptible to two interpretations, the one favoring the insured is adopted.").

In my view, this is a case involving concurrent causes of a loss. There is evidence in this record tending to prove the rain event was not the singular cause of Amish Connection's loss. The summary judgment record leaves room for the possibility that a fact finder could determine Amish Connection's loss would not have occurred but for the pipe's weakened condition and its failure. When faced with multiple-cause scenarios like this, some courts—including our own—have found coverage as a matter of law when one of the causal factors was covered by an insurance policy. *Kinney v. Farmers' Mut. Fire & Ins. Soc'y of Kiron*, 159 Iowa 490, 501–03, 141 N.W. 706, 710–11 (1913) (affirming the district court's decision to grant the insured's motion for directed verdict in a coverage dispute stemming from a winter windstorm featuring blowing snow because the insurer did not "show that the loss or damage was due to the [excluded hazards of] snow, or hail, . . . or some other cause" rather than the covered hazard of wind); *see also, e.g., Tento Int'l*, 222 F.3d at 663–64 (concluding when the covered hazard of third-party negligence interacted with the excluded hazard of rain, the loss was covered as a matter of law under a State Farm policy very similar to the one at issue here); *Berry*, 87 F.3d at 392–93 (finding coverage when the covered hazard of third-party negligence caused irrigation pipes to deteriorate from a chemical reaction to a fungicide, even though the hazard of deterioration was otherwise excluded); *Allstate Ins. Co. v. Smith*, 929 F.2d 447, 451 (9th Cir. 1991) ("We find that although rain 'operate[d] more immediately in producing the disaster,' it was the contractor's failure to cover the premises that 'set in motion' the chain of events leading to Smith's losses. The roofer's failure to cover the exposed premises, therefore, was the efficient proximate cause of Smith's losses. . . . [The insurer] must reimburse Smith for his losses to the

extent provided by the policy." (quoting *Premier Ins. Co. v. Welch*, 189 Cal. Rptr. 657, 660 (Ct. App. 1983))); *Safeco Ins. Co. of Am. v. Guyton*, 692 F.2d 551, 555 (9th Cir. 1982) (finding coverage for flood damage despite a flood exclusion in the policy because, had the negligently maintained flood control structures been properly maintained, they might not have collapsed when the flood struck them); *Davidson Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 136 F. Supp. 2d 901, 910 (W.D. Tenn. 2001) ("[T]he covered peril of water, despite other factors leading to the loss which might have been excluded, renders St. Paul liable on this policy . . . . [T]he Court finds that summary judgment on the issue of coverage is warranted and GRANTS [the insured's] motion for partial summary judgment on the issue of coverage."); *Mission Nat'l Ins. Co. v. Coachella Valley Water Dist.*, 258 Cal. Rptr. 639, 647 (Ct. App. 1989) (reversing a jury verdict and judgment in the insurer's favor, remanding with directions to enter judgment for the insured, and finding "coverage because [the covered risk of] flooding contributed to or aggravated the loss, even though the excluded design defect was found to be the efficient proximate cause of the loss").

In this case, however, we should not determine either coverage or exclusion as a matter of law because the causation question is not well-suited for summary judgment. A major insurance law treatise succinctly describes the strong preference for a jury to resolve causation questions:

> Issues of causation are almost always questions of fact. Determining what perils were working and whether they were working together independently or in succession (and if so how), as well as identifying the type of damage following the operation of each peril, all fall to the fact finder.

5 *New Appleman on Insurance Law* § 44.06[1], at 44-45 (Jeffrey E. Thomas & Susan Randall eds., Library ed. 2014). A case decided by the

Washington Court of Appeals presents an apt illustration of this maxim. *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 901 P.2d 1079, 1085 (Wash. Ct. App. 1995). In the case, four possible causes of a loss were indicated. *See id.* at 1081. One of the potential causes of the loss was covered and three were excluded. *See id.* (noting damage from wind-driven rain was covered, but damage from dry rot, seepage, or defective construction was not). The court declined to resolve the coverage question as a matter of law because causation "is an issue of material fact precluding summary judgment.*" Id.* at 1085. The same principle should be applied here.

Caselaw from other jurisdictions supports my view that summary judgment should not have been granted in this case. *See Mahaska Pork, L.P. v. Travelers Indem. Co. of Am.*, 777 F. Supp. 2d 1185, 1192 (S.D. Iowa 2011) ("The question of . . . proximate cause of the collapse is one that must ultimately be determined by a jury, not by this Court on motion for summary judgment."); *see also, e.g., Fidelity Coop. Bank v. Nova Cas. Co.*, 726 F.3d 31, 38 (1st Cir. 2013) ("The failure of the drain must properly be deemed the 'efficient proximate cause' of the damage, not the rain. The blocked or inadequate roof drain was a covered loss under the Policy . . . and was not excluded by any other exclusion. Accordingly, it was error for the district court to conclude [as a matter of law] that the interior damage was 'caused by rain' and was excluded from coverage under the rain limitation provision."); *Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312, 1325 (M.D. Fla. 2002) (refusing to grant summary judgment to the insurer because there remained a question of fact whether the loss was caused by the excluded hazard of preexisting rot or the covered hazard of tropical storm); *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 863 F. Supp. 1226,

1231–32 (D. Nev. 1994) (refusing to grant summary judgment to the insurer because a jury could find either a covered event or an excluded event caused the loss); *Garvey v. State Farm Fire & Cas. Co.*, 770 P.2d 704, 714 (Cal. 1989) (concluding "the question of causation is for the jury to decide" because the record contained sufficient evidence to support either of two causal possibilities); *Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 700 (N.J. Super. Ct. App. Div. 2004) ("[T]here remains a factual question as to the actual cause of the damage to plaintiffs' home . . . . Clearly, issues of causation are for the jury to resolve."); *Wider v. Heritage Maint., Inc.*, 827 N.Y.S.2d 837, 845 (Sup. Ct. 2007) (refusing to grant summary judgment in the insurer's favor despite a rain limitation in the policy because the loss arguably caused by rain was also caused by a third party's negligent tarp placement); *Villella v. Pub. Emps. Mut. Ins. Co.*, 725 P.2d 957, 964 (Wash. 1986) ("[F]actual questions remain as to whether an alleged negligently constructed drainage system (a covered peril) was the efficient proximate cause of the loss. If so, the earth movement exclusionary clause would *not* exclude coverage."); *Lawver v. Boling*, 238 N.W.2d 514, 521–22 (Wis. 1976) ("Here i[t] has not yet been determined whether Lawver's injuries resulted from negligence, if any, in the actual operation of the truck (an excluded risk) or from negligence in the choice of materials for and manner of construction of the rigging (a covered risk), or both. . . . That determination presents a question of fact which cannot be answered on a motion for summary judgment.").

Some court decisions holding a coverage question could not be resolved as a matter of law are not procedurally identical to this one, but they are nonetheless supportive of my view that summary judgment was inappropriate here. For example, we have concluded at least twice that the causation question in insurance coverage disputes was properly

presented to a fact finder. *Crozier v. Lenox Mut. Ins. Ass'n*, 252 Iowa 1176, 1184, 110 N.W.2d 403, 407–08 (1961) ("Plaintiff was insured against loss by windstorm. He claimed his loss was by windstorm. [The insurer] claimed there was no windstorm and that the barn fell because of faulty support during reconstruction. Fact issues for the jury were presented."); *Jordan*, 151 Iowa at 84, 130 N.W. at 181 (affirming a trial court's judgment after a bench trial in a dispute over whether the loss was caused by the covered hazard of windstorm or the excluded hazard of blowing snow, and noting causation "is a question of fact to be determined from the testimony").

Courts in other jurisdictions have reached similar conclusions. *See, e.g., Shinrone, Inc. v. Ins. Co. of N. Am.*, 570 F.2d 715, 716, 719 (8th Cir. 1978) (affirming a jury verdict and judgment in a dispute over whether a herd of cattle perished from the covered hazard of wind or the excluded hazard of extreme temperature, and noting the causation question was "properly submitted to the jury for the determination of whether the windstorm was the dominant or efficient cause of the loss, even though there may have been other contributing causes"); *Lynch v. Travelers Indem. Co.*, 452 F.2d 1065, 1066–67 (8th Cir. 1972) (affirming a jury verdict and judgment in a dispute over whether a skating rink collapsed due to the covered hazard of wind or the excluded hazard of accumulated snow on the roof, because "[i]n the context of th[e] case, . . . the trial court provided a proper framework for the jury to determine" which hazard caused the loss); *State Farm Fire & Cas. Co. v. Von Der Lieth*, 820 P.2d 285, 292 (Cal. 1991) (reinstating a jury's determination on causation and concluding it was error for an intermediate appellate court to determine the question as a matter of law); *Davis v. United Servs. Auto. Ass'n*, 273 Cal. Rptr. 224, 230 (Ct. App.

1990) ("Under the theory of the Davises' expert, the cause of the loss was the failure to adequately prepare the soil and foundation: but for the negligence in preparing the soils and foundation, the earth movement would not have caused a loss. Under the theory of USAA's expert, but for the earth movement, there would not have been a loss. In other words, there was a conflict in the evidence and the trial court was entitled to resolve this conflict . . . ."); *Gillis v. Sun Ins. Office, Ltd.*, 47 Cal. Rptr. 868, 875 (Dist. Ct. App. 1965) (affirming the judgment entered after a fact finder determined wind (a covered hazard) caused the loss despite contribution from waves (an excluded hazard), and noting "[i]t may be inferred that in the absence of the blow from the gangway [blown down by wind], the docking facility would have ridden out the storm with no appreciable damage"); *Wallach v. Rosenberg*, 527 So. 2d 1386, 1387–88 (Fla. Dist. Ct. App. 1988) (insisting "the question as to which of several causes contributing to a loss is the . . . proximate cause[] is one for the jury" and concluding "[w]here weather perils combine with human negligence to cause a loss, it seems logical and reasonable" to allow the jury to find coverage "even if one of the causes is excluded from coverage"); *Vormelker v. Oleksinski*, 199 N.W.2d 287, 292–93 (Mich. Ct. App. 1972) ("[T]here is a question of what the proximate cause of the damage was: the earth movement or the inadequate foundation. Under these circumstances, the trial court was correct in refusing to grant either a directed verdict or a judgment n.o.v."). Together, these cases—both those that involved summary judgment and those in which a fact finder decided causation—demonstrate that concurrent causation issues often present factual questions only a fact finder should answer.

I acknowledge that some courts have granted summary judgment to the insurer in concurrent causation circumstances. When granted in

those cases, summary judgment was typically founded on anticoncurrent-cause language in the particular insurance policy. *See, e.g., TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733–34 (8th Cir. 1997) (affirming summary judgment in the insurer's favor because although the loss was caused both by the covered hazard of vandalism and the excluded hazard of flood, specific language in the policy provided for exclusion in concurrent causation situations); *Front Row Theatre, Inc. v. Am. Mfr.'s Mut. Ins. Cos.*, 18 F.3d 1343, 1349 (6th Cir. 1994) (affirming summary judgment in the insurer's favor because of express policy language excluding coverage from concurrently caused loss even if one cause was otherwise covered); *Freedman v. State Farm Ins. Co.*, 93 Cal. Rptr. 3d 296, 301 (Ct. App. 2009) (affirming summary judgment granted to State Farm because of express policy language that excluded coverage for third-party negligence if it interacted in any way with an otherwise-excluded cause). The effect, if any, of anticoncurrent-cause language was not raised or decided in the district court and is not before us in this appeal.

The majority characterizes the "**LOSSES INSURED**" section of Amish Connection's policy as a functional equivalent of anticoncurrent-cause language. The **LOSSES INSURED** section of the policy states, in its entirety:

> We insure for accidental direct physical loss to property covered under this policy unless the loss is:
>
> 1.  limited in the **PROPERTY SUBJECT TO LIMITATIONS** section; or
>
> 2.  excluded in the **LOSSES NOT INSURED** section that follows.

In my view, however, this is not an anticoncurrent-cause provision. Cases cited by the majority in this case illustrate the fact that

anticoncurrent-cause provisions typically include the word "concurrent"—for example: "We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."  *TNT Speed & Sport Ctr.*, 114 F.3d at 732 (quoting an anticoncurrent-cause policy provision); *see also Am. Fam. Mut. Ins. Co. v. Corrigan*, 697 N.W.2d 108, 114–15 (Iowa 2005) (enforcing an anticoncurrent-cause provision).

Amish Connection's policy does include express anticoncurrent-cause provisions like those involved in *TNT Speed* and *Corrigan*.  For example, paragraph 1 of the "**LOSSES NOT INSURED**" section reads:

> 1.  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events.  We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss[.]

The "following excluded events" to which this provision refers are: enforcement of any ordinance or law; earth movement; volcanic eruption; water such as flood, surface water, waves, tides, mudslides, sewer backup, and seeping groundwater; seizure or destruction of property by order of governmental authority; nuclear hazard; failure of power to the premises; and war or military action.

Paragraph 3 of the **LOSSES NOT INSURED** section contains additional anticoncurrent-cause language:

> We do not insure for any coverage for any loss consisting of one or more of the items below.  Further, we do not insure for loss described in paragraphs 1. or 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss[.]

State Farm did not raise either of these provisions in its motion for summary judgment. Nor did it raise them in its resistance to Amish Connection's motion for more specific ruling. Instead, State Farm relied exclusively on language from a different section: the **LOSSES INSURED** section. Notably, State Farm expressly argued the district court need not consider any language from the **LOSSES NOT INSURED** section. The district court agreed, and even when it denied Amish Connection's motion for a more specific ruling, the court expressly relied only on the **LOSSES INSURED** section of the policy.

The majority concludes State Farm's reliance on the **LOSSES INSURED** policy provision effectively raised any anticoncurrent-cause provisions in the policy. I strongly disagree. Both anticoncurrent-cause provisions are in the **LOSSES *NOT* INSURED** section—and State Farm expressly asserted the district court should not even consider language from that section in making its summary judgment decision.

I acknowledge the maxim that "[t]he individual provisions of a policy must be read in conjunction with the policy as a whole." *Ferguson v. Allied Mut. Ins. Co.*, 512 N.W.2d 296, 300 (Iowa 1994); *accord Grinnell Mut. Reinsurance Co.*, 494 N.W.2d at 692. But this maxim does not authorize State Farm to sing a completely different song on appeal than it sang in the district court. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). Further, even if we were to consider policy provisions—the **LOSSES NOT INSURED** section—not relied upon by State Farm in the district court or the court itself in its summary judgment ruling, we should not find them sufficient to decide the coverage question in this case as a matter of law.

Amish Connection is not covered if its loss was "caused by rain," as stated in the **PROPERTY SUBJECT TO LIMITATIONS** section, *or* if it

is excluded in the **LOSSES NOT INSURED** section. I acknowledge that the word "or" is disjunctive in this context. But whether the loss was "caused by rain"—or by some other covered cause—is the fighting issue in this case. In my view, provisions in the **LOSSES NOT INSURED** section leave wide open the possibility that causes of loss other than rain are not excluded—even when concurrent causes are involved—and are therefore still in play here. A jury should be entitled to resolve factual questions like these.

I begin with paragraph 1 of the **LOSSES NOT INSURED** section. Paragraph 1 excludes any loss concurrently caused, even in part, by occurrences from a list of "excluded events." These events are predominantly large-scale disasters—earthquakes, volcanic eruptions, nuclear meltdowns. Paragraph 1(d) includes "surface water" as an excluded event. However, because surface water is included in a list alongside flood, waves, tides, mudslides, and groundwater seepage, it is evident—using the canon of *noscitur a sociis*—that surface water in paragraph 1(d) does not include the rainfall in this case. *See Black's Law Dictionary* 1224 (10th ed. 2014) (explaining that *noscitur a sociis* means the definition of a word or phrase "should be determined by the words immediately surrounding it"). None of the other "excluded events" in paragraph 1 are remotely applicable to this case. Accordingly, paragraph 1 does not preclude the possibility that, if Amish Connection's loss had multiple causes—one excluded and one covered—a jury could find the covered hazard was predominant and should afford Amish Connection coverage in this case.

I now turn to paragraph 3. This paragraph's language must be unpacked carefully. The first sentence states: "We do not insure for any coverage for any loss *consisting of* one or more of the items below."

(Emphasis added.). The "items below" are subparts 3(a) and 3(b). 3(a) refers to "conduct, acts or decisions, including the failure to act or decide, of any person . . . , whether intentional, wrongful, negligent or without fault"—essentially third-party negligence. 3(b) refers to "faulty, inadequate, unsound or defective" planning, design, construction, materials, and maintenance. But, as I have explained, Amish Connection's loss does not *consist of* third-party negligence or faulty maintenance; if it did, the only costs for which Amish Connection would be seeking coverage would be the cost of repairing or replacing the failed pipe. Therefore, this first sentence of paragraph 3, standing alone, would not preclude coverage for a loss "caused by"—not "consisting of"—faulty maintenance.

> The next sentence of paragraph 3 provides:

> [W]e do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether [the causes described in 3(a) and 3(b)]: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss[.]

As I have explained, paragraph 1 immediately above this language contains "excluded events" that are all inapplicable to the factual circumstances of this case. Paragraph 2 "immediately above" describes sixteen types of loss, in subparts 2(a) through 2(p). Only two of these could possibly be relevant here. Paragraph 2(k)—in conjunction with paragraph 3—excludes coverage for loss caused by "continuous or repeated seepage or leakage of water that occurs over a period of time" when that seepage combines with third-party negligence or faulty maintenance. However, the loss (water-soaked and ruined inventory) claimed in this case by Amish Connection was not due to continued or

repeated seepage or leakage; it was due to a one-time event—the burst pipe.

Paragraph 2(d) is the only other subpart of paragraph 2 that could possibly be relevant here. It excludes loss caused by—not merely consisting of—rust, corrosion, and deterioration. Combined with paragraph 3, paragraph 2(d) could, at first blush, reasonably be read to exclude coverage if faulty maintenance caused the pipe to rust, which in turn caused the water damage in this case. However, paragraph 2(d) contains an additional statement: "But if accidental direct physical loss by any of the 'Specified Causes of Loss' . . . results, *we will pay for that resulting loss*[.]" (Emphasis added.). In other words, although most loss caused by rust, corrosion, or deterioration is excluded, "Specified Causes of Loss" *are still covered.* As I have noted above, the Specified Causes of Loss under this policy include "water damage" arising from "accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam." Thus, even if there is evidence that faulty maintenance of the pipe allowed it to rust and ultimately fail, Amish Connection's loss is not excluded from coverage under paragraph 3(b).

My colleagues in the majority stress the fact that, according to State Farm, the policy was never intended to cover faulty maintenance. Whatever State Farm's intent, however, the actual policy language belies that assumption. The final clause of paragraph 3 states: "But if accidental direct physical loss results from items 3.a. and 3.b., we will pay for that resulting loss unless the resulting loss is itself one of the losses not insured in this section." Item 3(b) is faulty maintenance. Thus, this express policy language indicates State Farm *will pay* for loss resulting from faulty maintenance unless the resulting loss is not

insured in the **LOSSES NOT INSURED** section. Crucially, the rain limitation is not found in the **LOSSES NOT INSURED** section. In sum, even if State Farm and the district court had relied on the **LOSSES NOT INSURED** section of the policy—and here they clearly did not—summary judgment would not have been appropriate in this case.

Although the majority attempts to distinguish it, the Ninth Circuit's decision in *Tento International* is actually quite analogous to this case. *See Tento Int'l*, 222 F.3d at 661. A roofing contractor was making repairs but failed to install a temporary covering. *Id.* "Almost predictably, rain fell and damaged Tento's electronics equipment." *Id.* Tento's insurance policy with State Farm contained a rain limitation identical to the one in Amish Connection's policy, and it also contained an identical paragraph 3. *See id.* at 661–62. The court determined the efficient cause, not merely the most immediate cause, should determine coverage—even though the policy had several provisions materially identical to the ones in Amish Connection's policy. *See id.* at 662.

Further, the court examined the "inexact wording in the resulting-loss provision." *Id.* It determined Tento had coverage as a matter of law:

> The resulting-loss provision states that, "if accidental direct physical loss results from items 3.a. and 3.b. [i.e., the contractor's third-party negligence], we will pay for that resulting loss unless the resulting loss is itself one of the losses not insured *in this section.*" (emphasis added). The question becomes whether the resulting loss—damage to Tento's goods by rain—is "one of the losses not insured *in this section.*" (emphasis added). The words "in this section" appear in numbered paragraph 3 of the LOSSES NOT INSURED section of the policy. Logically, then, the words "in this section" refer to the LOSSES NOT INSURED section and that section does not preclude coverage for rain damage.
>
> We recognize it is arguable that the scope of the "in this section" phrase could refer to the entire basic coverage of Section I, which includes the LOSSES INSURED as well as the LOSSES NOT INSURED sections. The LOSSES

> INSURED section incorporates by reference the earlier PROPERTY SUBJECT TO LIMITATIONS section, and that section includes the rain-damage limitation. Under this reading, the policy would not provide coverage for Tento's rain-damaged goods. We reject this reading, however, because it is illogical, and defies a common-sense reading of the policy. Moreover, we note that when the policy refers to the entire "Section I," it uses an upper case "S" to signal this broader reference.

*Id.* at 663. Amish Connection's policy also uses an uppercase S when referring to the entire Section I. Applying the *Tento* analysis to the facts of this case, Amish Connection might have coverage as a matter of law— although its loss might fit more squarely under the paragraph 3(b) faulty maintenance provision than under the paragraph 3(a) third-party negligence provision.

But I do not advocate we go that far on this record. Rather, I conclude the summary judgment should be reversed and the case remanded for trial. The evidence will establish whether Amish Connection's loss was due to the mall's faulty maintenance, or rust, decay, or some other cause or combination of causes. Although coverage is excluded if the loss was caused by rain, it could also have been caused by something else, or by a combination of other causes for which coverage exists.

When reviewing summary judgment rulings, we must make all factual inferences supported by the record in the nonmovant's favor. *See, e.g., Hagenow v. Am. Fam. Mut. Ins. Co.,* 846 N.W.2d 373, 376 (Iowa 2014); *Pitts v. Farm Bureau Life Ins. Co.,* 818 N.W.2d 91, 96 (Iowa 2012); *Emp'rs Mut. Cas. Co. v. Van Haaften,* 815 N.W.2d 17, 22 (Iowa 2012). In this case, I believe a reasonable fact finder could find rain was neither the sole nor even the primary factual cause of Amish Connection's loss. I would therefore affirm the court of appeals and afford Amish Connection the opportunity to make its case on the causation question.

Wiggins and Appel, JJ., join this dissent.